# IN THE MATTER OF THE ESTATE OF OLAF NICHOLSON.

The percentage allowed by law to Administrators for collecting and disbursing money is one of the expenses of administration which should be allowed in preference even to funeral expenses.

Attorneys' fees may or may not be properly charged among the expenses of administration, according to the particular circumstances of the case.

Insurance paid by an Administrator on the property of a decedent, ought to be allowed as one of the expenses and charges of administration. But if money be paid for insurance under circumstances showing recklessness and want of proper care and prudence, the Court may properly refuse to allow it.

APPEAL from the District Court of the First Judicial District, State of Nevada, Storey County, Hon. R. S. MESICK presiding.

The facts are stated in the opinion.

*Quint & Hardy*, for Appellant.

The real point in this case is which are to be paid first, the funeral expenses and expenses of last sickness or the expenses of the administration.

The great discrepancy between the amount realized by the administration and the appraised value of the property is not charged to have been caused by any culpable conduct of the Administrator.

. Under the statute the Administrator is entitled to his disbursements made to preserve the estate. This is not a debt against the estate. (*Fitch* v. *Whitlach*, 2 Barb. Ch. R. 163.)

The Probate Court has no discretion as to allowance of commissions and other necessary expenses of administration. (*Dakin* v. *Deming*, 6 Paige Ch. R. 101; 6 Paige Ch. R. 12.)

*N. D. Anderson*, for Respondent.

The appellant's accounts did not show which of the items set forth therein as debts against the estate were and which were not paid. For this reason the account should have been rejected.

Under that part of appellant's account headed "expenses of administration" is an item of two hundred and fifty dollars for attorneys' fees. This should be deducted.

Under the head "cash outlay on the estate by the Admistrator" is an item of one hundred and fifty-four dollars' insurance on house. This should be deducted. Also error in addition of twenty dollars.

The point of respondent is: These items mentioned are not *necessary* expenses to be allowed in preference to funeral expenses.

Opinion of the Court by Justice BEATTY, full Bench concurring.

C. J. Nelson, the Administrator on the estate of Olaf Nicholson, filed his account for final settlement, and asked the Court to discharge him from further liability. E. W. Keyes, the undertaker who buried the deceased, filed his objections to this account, opposed the discharge, and asked that an order be made on the Administrator to pay the funeral expenses. The Court made the following order: "The final settlement of said estate, as is prayed for by the Administrator thereof, is this day refused, and the Administrator of the same is ordered to pay the funeral and burial expenses of the said deceased." From this order the Administrator appeals. It appears from the appraisement of the estate contained in the transcript that it consisted of a house and lot in Virginia City, appraised at four thousand dollars, and twenty-five shares of mining stock appraised at six hundred and twenty-five dollars. The claims against the estate at the time of intestate's death were: for expenses of last sickness, six hundred and eighty-two dollars and fifty cents; for other debts, ten hundred and fifty-three dollars and sixty-four cents. The account filed shows that the Administrator realized one hundred and ninety-eight dollars from rent of house, six hundred and fifty dollars from sale

of house and lot, and thirty dollars by the sale of twenty-five shares of mining stock, say in all eight hundred and seventy-eight dollars.   The other side of the account is as follows:

"Expenses of Administrator."—Here follows a list of items consisting of percentage on the amount of estate, fees to attorneys for estate, clerk's fees, auctioneer's charges, appraiser's fees, etc., amounting in all to five hundred and forty-six dollars and forty-six cents.   Then follows, "Cash outlay on the estate by the Administrator," followed by a string of items, the first of which is insurance on house, one hundred and fifty-four dollars.   The other items under this head consist of items paid for taxes and repairing house, amounting in the aggregate (including the one hundred and fifty-four dollars) to three hundred and forty-three dollars.   The next item in account is: "Expenses on mining stock."   "To assessments at different times   *   *   *   two hundred and twenty-five dollars."   After this comes the funeral expenses, amounting to two hundred and seventy-three dollars and twenty-five cents; next, the expenses of last sickness; and lastly, other debts. Keyes objects to this account in many particulars.   He objects that the percentage on the estate and the amount paid the attorneys should have been postponed to and not paid until after the funeral expenses.   He objects that the charge of one hundred and fifty-four dollars for insuring house is not a proper charge against the estate, and that the Administrator cannot be reimbursed from the estate for that charge.   He also makes the same objection to the item of two hundred and twenty-five dollars for expenses on mining stock.

We are clearly of the opinion that the percentage allowed for collecting and disbursing of the estate is a proper allowance to be made as one of the expenses of the administration, to be paid in preference to the funeral expenses.   An attorney's fee may or may not be a proper charge among the expenses of an administration.   If a person employs an attorney to procure his appointment as an Administrator, that should not be a charge against the estate.   The presumption is, he seeks the appointment because of some expected benefit or advantage to himself.   The estate should no more pay his attorney than it should pay the attorney of an unsuc-

cessful applicant for the same position. Where one is already Administrator, if the estate is involved in litigation, or threatened with litigation in regard to the property claimed for it, it is undoubtedly the duty of the Administrator to employ counsel to defend its interests. If the estate has much complicated business to be attended to, when legal advice would be necessary, the Court ought undoubtedly to allow an Administrator his reasonable disbursements for counsel fees. But it is not incumbent on every Administrator to employ an attorney; and where the estate is not involved in any difficulty we do not think it an abuse of discretion in the District Court to refuse to allow, among the expenses of administration, fees to attorneys whom it was not necessary to employ. We cannot say that it was necessary in this case to employ attorneys to so completely waste an estate worth between four and five thousand dollars, and not involved in litigation, as to leave nothing to pay even funeral expenses.

The charge for cash paid for insuring house is one which, ordinarily, we should consider a legitimate charge, and there ought to be some very·special reason for not allowing such a charge to an Administrator; still there might be such extraordinary circumstances attending the payment of such premium as would justify the District Court in not allowing such item. In this case there is something rather extraordinary in the fact that a lot in the heart of Virginia City, with a building on it, appraised at four thousand dollars in February, 1864, should have sold in May, 1865, for only six hundred and fifty dollars. And the Court may have been justified in refusing to allow a charge of one hundred and fifty-four dollars for insurance on a house which with the real estate could only be sold for so trifling a sum. If the property was only worth six hundred and fifty dollars it may have been imprudent and reckless to pay one hundred and fifty-four dollars as insurance on a house of no more value than this must have been.

With the light before us, we are not disposed to interfere with the action of the Court below. The form of the account would seem to negative the idea that the two hundred and twenty-five dollars for assessments had been paid by the Administrator. It is separated from those items which come

under the heading of " Cash outlay on the estate by the Administrator."

If that item has not been paid by the Administrator, and he is not personally bound for it, and there is nothing to show either that he has paid it, or is bound to pay it, then this item cannot be allowed before the funeral expenses. If the attorneys' fees, and the amount paid for insurance be deducted from the Administrator's disbursements, there will remain in his hands three hundred and ninety-three dollars, and it was proper for the District Court to order the funeral expenses to be paid out of this amount.

Before leaving this case we will say, that it has become a reproach to the States west of the Rocky Mountains, that, however solvent a man may be whilst living, if he is not very wealthy, the chances are that when he dies his estate will be insolvent. Here is an example of the way in which estates are wasted. A man dies worth some three thousand dollars over and above all his liabilities, and the Administrator not only fails to pay a dollar of his existing debts, but claims that he ought not to pay even his funeral expenses. There must be something radically wrong in the management of estates when such results are produced.

It behooves District Courts to look narrowly into the management of estates, and see that they are not thus wasted. It has not been the intention of the Court to express any opinion against the reasonableness of the attorneys' fee in this case, for the amount is by no means extravagant, but rather to express the opinion that parties who thrust themselves into the administration of estates when they are incapable of properly managing them, should pay their own attorneys, and not impose that expense on others.

The judgment of the Court below is affirmed.