CASE 81—EXCEPTIONS TO REPORT OF SETTLEMENT OF JOHN P. MORTON'S ESTATE.—FEB. 12.

# Morton's Exrs. v. Morton's Exr.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT SUSTAINING EXCEPTIONS AND JOHN P. MORTON'S EXECUTORS APPEAL. AFFIRMED.

DESCENT AND DISTRIBUTION—TAXES PAID BY EXECUTORS—LIABILITY OF WIDOW—COMPENSATION OF EXECUTORS—PROBATE AND CONSTRUCTION OF WILL—COSTS OF LITIGATION WIDOW'S LIABILITY —RENTS BEFORE ASSIGNMENT OF DOWER—RIGHT OF WIDOW.

Held.    1.    A widow who renounced her husband's will was not chargeable with any part of the amount paid by the executors as taxes on personal estate, in the absence of anything to show that the only item of personalty of any magnitude in which she had any interest for the years represented by the taxes was embraced in the assessment.

2. Where the executors distributed $50,000 of the capital stock of a corporation, and about $30,000 of railroad bonds belonging to the estate, having new certificates of stock issued, one-half to the widow, and the other half to the distributees under the will, and dividing the bonds in a similar way, the action of the chancellor in refusing to allow the executors more than $200 for that service will not be disturbed; it appearing that they were allowed on the remainder of the estate the customary rate of five per cent. for their services.

3. The widow, having renounced the will, is not liable for any part of the costs incurred in litigation over its construction and probate, as her interest in the estate could not be in any way affected by that litigation.

4. Where one of the executors who kept a set of books for the accounts of the estate was allowed $50 per month for that service in addition to his other allowances up to the date of the last settlement, he can not complain of the refusal to make him a similar allowance for the subsequent years of the trust, as comparatively few accounts were then left open.

5. Under Kentucky Statutes, section 2138, providing that "the wife shall be entitled to one-third of the rents and profits of her

husband's dowable real estate, from his death till dower is as-signed," the widow is entitled to the gross rents during that time, without any deduction for taxes, insurance, or repairs.

BARNETT & BARNETT, FOR APPELLANTS.

R. C. KINKEAD, FOR APPELLEE.

(No briefs.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

In the suit to settle the estate of John P. Morton, de-ceased, the following questions have arisen, and are pre-sented by this appeal for decision:

The testator, John P. Morton, died childless. His widow renounced the provisions of the will. Litiga-tions involving first the probate of the will, and then its construction, ensued; each, of course, creating certain neces-sary legal expenses. Each of the litigations was here for settlement. 99 Ky., 317, 14 R., 360, 36 S. W., 2. The widow received the greater portion of her part of the personal es-tate in or prior to 1894. In the settlement now in question, certain taxes were paid by the executors, assessed against its personalty, but no part was charged to the widow's share of the estate. It does not appear what personal es-tate was included in these assessments. There was but one personal asset of any magnitude in which the widow is shown to have had any interest for the years represented by the tax paid. It is not shown that this item of person-alty (the John P. Morton & Co. note of $32,000) was em-braced in these assessments, or any of them. The record, so far as it shows anything on the subject, seems to show that it was not. One of the executors, who had had special charge of the books of the estate, and the one most famil-iar with its affairs, when on the witness stand before the commissioner, failed, though several times requested, to

make such explanations of his settlement as would show clearly what assets were included in this assessment. It was not proper, therefore, to charge any of this item against the widow.

The executors distributed $50,000 of the capital stock of Jno. P. Morton & Co. corporation, and $29,698.39 of railroad bonds belonging to the estate, having new certificates of stock issued, one half to the widow, and the other retained for the distributees under the will, and the bonds divided similarly. They asked for an allowance of 2½ per cent. on this sum ($79,698.39) for their services concerning these two items. The court refused it. Instead, there was allowed them $200. On the remainder of the estate, which was large, the executors appear to have been allowed and paid the customary rate of five per cent. for their services. Under the facts of this case, we are not inclined to disturb the chancellor's judgment in making this allowance. He had exceptional opportunity for justly valuing the executors' services to this estate in each particular.

The executors complain that certain costs incurred in the litigations over the probate of the will and for its construction should have been paid out of the estate before distribution to the widow. We think not. She was in no wise interested in either of those litigations, nor could her interest in her husband's estate be enhanced or decreased by them in any event. Miller's Ex'r v. Simpson (8 R., 518), (2 S. W., 171).

One of the executors kept a set of books for the accounts of the estate. For the first few years of this trust, and before the estate's affairs had been reduced to a more settled condition—leaving open, indeed, but comparatively few accounts—this executor was allowed and paid $50 per month for this service, in addition to his other allowances. He

asked for an allowance at the same rate since the date of the last settlement. It was his duty to so keep his accounts that the condition of the estate, and of the standing of the executors' accounts with it, could be readily and accurately ascertained at any reasonable time. Not to have done so would, in an estate like this, have been culpable neglect of duty. After the estate had been so nearly settled as this one is, we can not say that the chancellor in any wise abused a sound discretion in refusing this additional salary. The sum asked for on this account and refused was $1,250.

A more troublesome question is presented by the trial court's ruling that the widow was entitled to one-third of the gross rents of all real estate until dower was assigned to her. Section 2138, Kentucky Statutes, is as follows: "The wife shall be entitled to one-third of the rents and profits of her husband's dowable real estate, from his death till dower is assigned, and she shall hold the mansion house, yard, garden, the stable and lot in which it stands, and an orchard, if there is one adjoining any of the premises aforesaid, without charge therefor, until dower is assigned her." This provision of our law is in lieu of, and is derived from, the ancient rights of quarantine and estover, granted to the widow from the earliest times. Co. Litt., 32b; King John's Magna Charta, c. 7; 2 Inst., 17. It is not an "estate," strictly speaking, but, rather, an arbitrary and temporary provision for the widow's shelter, and the support due her from her part of her husband's realty in possession till such time as dower can be assigned her. It has never been deemed subject to execution, even against her goods and estate 2 Scrib. Dower, 65. It is the continuing temporarily of that providence due one in distress and bereft of her natural provider—an arrangement suggested originally,

it may well be supposed, by a tender regard for her condition. The statute of 1797 (1 Morehead & B. Ky. St. p. 573) made this provision: "A widow, after the death of her husband, shall tarry in the mansion-house of her husband, and the plantation thereto belonging rent free, until her dower shall be assigned her; and if she be thereof in the meantime deforced, she shall have a vicontiel writ, in the nature of a writ *de quarentina habenda,* directed to the sheriff, whereupon such proceedings and speed shall be used as hath or might have been used on the said writ of *quarentina.*" Such remained the law in this State till the adoption of the Revised Statutes (Driskell v. Hanks, 18 B. Mon., 864), when the present law was first enacted, and substantially in the language now used. It is to be observed that this temporary provision is made without much reference to the widow's final interest when assigned. Under the former statute she had the use of the farm on which was the family residence till dower was assigned, even if that farm was the only estate left by the husband. Now she has, in lieu of that, the mansion house and curtilage, and one-third of the rents and profits of all his other dowable estate. The law does not restrict her to net rents; nor does it, by any term used, subject this provision for support to any burden or charge. The use of the word "profits" can not be deemed to be a limitation upon, or qualification of, the preceding word, "rents." A study of this subject shows that the tendency has been from the date of the Great Charter of King John, in 1215, wherein the widow was given the right to remain 40 days, only, in the mansion house of the husband, "within which time her dower shall be assigned," to enlarge, rather than curtail, this privilege of the widow. So conditions occasionally arose where the dowable estate included a ferry or a mill, or such like. Stevens' Heirs v.

Morton's Exrs. v. Morton's Exr.

Stevens, 3 Dana, 373. Their operation included more than the use of the realty to which they pertained. They included the labor of the heir or his servant, and other expenses. So provision was made for sharing of profits, allowing for the deduction of such expenses. The letter of the statute in this case is imperative, and admits of no conditions. The history and trend of such legislation, too, point to the same conclusion. The widow was entitled to one-third of the rents—gross rents—until the allotment of her dower. Taxes and repairs were debts against the estate, to which her quarantine right was not subject. In no event could she have been liable for one-third of the insurance. In the first place, it does not appear to have issued for her benefit; nor did she authorize it, so far as the record discloses. One can not be made an involuntary party to such a contract. Even had the policies been written so as to cover her interest, at her advanced age, one-third of the costs compared to the great disproportion of advantage, could not have been allowed. We have not overlooked Anderson v. Fitzpatrick (20 R., 1617) (49 S. W., 786). The opinion in that case was based upon a distinctly different statute from the one now under consideration. Nor does the opinion show all the facts in that case that may have made it peculiarly proper to subject the widow's claim for rents to the charge of taxes, insurance and repairs.

The judgment, in every particular, is affirmed.