## Baldwin's Exor., et al. v. Barber's Exors., et al.

(Decided May 15, 1912.)

### Appeal from Nelson Circuit Court.

1. Attorneys' Fees—Will Contest—Allowance.—On appeal from a judgment fixing fees of counsel for propounders in a will contest: Held, that the allowances made by the chancellor were reasonable.
2. Attorneys' Fees—Allowance by Chancellor.—On appeal from a judgment fixing the fee of an attorney for defending a fraud suit and a suit for back taxes against the executors, and conducting a suit for the construction of the will and settlement of the estate, and for services in advising the executors as to the management of the estate; held, that an allowance of $7,500 is unreasonable, and that the fee for such services should be fixed at $3,500.
3. Executors—Fees—Extraordinary Services.—On appeal from a judgment fixing the allowance of the executors at 5 per cent, and also allowing them $1,000 for extraordinary services in defending the will and in prosecuting and defending other suits affecting the estate: held, that in view of the size of the estate, the character of the investments and the ease with which it could be distributed, an allowance of 5 per cent is sufficiently large to cover all services, ordinary and extraordinary, performed by the executors.
4. Attorneys' Fees—Will Contest—Contribution by One Benefited by Litigation Contrary to His Wishes.—Where a will, under which one and his children are devisees, is contested contrary to his wishes, he cannot be compelled to contribute to the payment of the expenses of the litigation, even though he be personally benefited thereby.

JOHN S. KELLEY, JOHN A. FULTON, KELLEY & CHERRY and G. S. & J. A. FULTON for appellants.

NAT W. HALSTEAD, MORGAN YEWELL, W. C. McCHORD, EDELEN & DAVIS, McCANDLESS & LARIMORE and C. T. ATKINSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in Part and Reversing in Part.

P. S. Barber, a resident of Nelson county, Kentucky, died intestate in the year 1893. He left an estate of about $400,000. His property consisted largely of real estate, located in Nelson and Bullitt counties, Kentucky, Louisville, Kentucky, Chicago, Illinois, and in the States of Tennessee and Mississippi. He was survived by his wife, Cecelia Barber, and two children, John R. Barber and Amelia L. Baldwin. His son, John R. Barber, and son-in-law, A. B. Baldwin, qualified as his administrators, and settled his estate. Shortly after the death of P. S. Barber, his wife and two children entered into an agreement by which each took a one-third interest in his estate. W. C. McChord acted as attorney for the parties, and pursuant to their contract of settlement, prepared a written agreement, and deeds of division, carrying out this agreement, which were duly executed and recorded. Under this contract of division, each of the parties thereto took absolute title. In making this division, they estimated each one's share at $120,000.

In May, 1908, Cecelia Barber died testate. W. C. McChord and John L. Barber were nominated as executors. The will is a voluminous document, consisting of six paragraphs in the original will, and six codicils. It contains fifty-seven specific devises, and altogether sixty-nine different items. The will was originally executed in 1897. After that time the six codicils were added. The first paragraph of the will relates to the charitable devises; the second, to devises to friends and relatives; the third, to devises to testatrix' daughter, Amelia L. Baldwin, and her family; the fourth, to devises to John R. Barber and his family; the fifth, to devises of heirlooms; the sixth disposes of her residuary estate. The codicils made changes in the devises theretofore made, revoking some legacies and adding new ones, and also made provision with reference to the residuary estate. At the time of the execution of the original will, the testatrix' estate amounted to about $135,000. W. C. McChord acted as her agent in the management of the estate. Though the testatrix gave away large sums to relatives, friends and various charities, she had, at the time of her death, about $180,000, a fact which speaks well of the prudence and capacity of her agent.

On June 25, 1908, Amelia L. Baldwin, daughter of Cecelia Barber, instituted an action in the Nelson Circuit Court, contesting the will on the ground of mental incapacity and undue influence. Shortly thereafter, Mrs. Baldwin died, and the action was revived in the name of John E. Newman, her executor, and in the name of her infant grandchild, for whom John E. Newman was trustee. Mrs. Baldwin's children, who were devisees under the will of Cecelia Barber, and John R. Barber were made contestees. The contestants were represented by George S. Fulton, John A. Fulton, John S. Kelley, R. C. Cherry, E. E. McKay, of the Bardstown bar, and J. W. S. Clements, of the Louisville bar.

Upon the filing of the contest proceedings, Cecelia Barber's executors, W. C. McChord and John L. Barber, employed Nat W. Halstead, of Bardstown, and Frank P. Straus, of Louisville, to represent the propounders of the will. The attorneys so employed demanded of the executors a written contract fixing the amount of the fee to be paid for the will contest. The attorneys asked the sum of $10,000, but finally agreed to a fee of $7,500 for services both in the trial court and in the Court of Appeals. This agreement was reduced to writing, and executed by the parties on August 28, 1908. The case was prepared for trial at the October, 1908, term of the Nelson Circuit Court, but was continued to the February, 1909, term. The trial began on the 20th day of February, and ended on March 3. The suit practically involved the life history of the Barber and Baldwin families, and forty-five witnesses were introduced and examined. The suit was fought with considerable bitterness. The jury returned a verdict sustaining the entire will, with the exception of Paper A No. 1, containing paragraph 3d, following item 8; and item second of paragraph 6. Thereupon the executors made a motion for a judgment probating the entire paper and all the codicils as the will of Cecelia Barber, notwithstanding the verdict, and also made a motion for a new trial. These motions were overruled and the executors prosecuted an appeal to this court.

On March 13, 1909, the executors, and John L. Barber in his individual capacity, brought this action for a construction of the will and a settlement of the estate, in the Nelson Circuit Court. One of the questions presented in the action was whether or not the will, as established by the jury, disposed of the entire estate of

the testatrix. The regular judge was of the opinion that it did, but a special judge, to whom the question was afterwards submitted for judgment, held that all the estate which was not made the subject of a special bequest was undisposed of, and passed by the laws of descent to the heirs at law of the testatrix. Judgment was entered accordingly, and an appeal prosecuted to this court. Here, the two cases were argued, heard and considered together. The cases were briefed for the executors by Straus and Halstead, and Edelen and Davis. The cases were orally argued by Halstead and Edelen. The judgment in each case was affirmed by this court. Barber's Exr. v. Baldwin, et al.; Barber, et al. v. Newman, et al., 138 Ky., 710. A petition for rehearing was thereafter filed by the appellants and overruled.

On August 9, 1909, John E. Newman, as executor of Amelia L. Baldwin, for the purpose of setting aside the various contracts made between her and her mother, and John R. Barber, on the ground of fraud, filed an action against the executors of Mrs. Cecelia Barber and John R. Barber. It was charged in the petition that W. C. McChord was the paid attorney of Mrs. Baldwin, and also of Mrs. Cecelia Barber and John R. Barber. That Mrs. Baldwin was unaware that under the law her mother only took a dower interest in her husband's estate, and that W. C. McChord, her attorney, fraudulently suppressed that knowledge from her, and that he and John R. Barber and Mrs. Cecelia Barber fraudulently conspired together to induce Mrs. Baldwin to agree upon the division made by the parties. In this action a recovery of $86,000 was asked against the executors. A motion was made by counsel for the executors to transfer the case from common law to equity, and this motion was sustained. A special demurrer for defective parties was sustained, and plaintiff filed an amended petition, making the devisees of Amelia Baldwin parties. A general demurrer to the petition was overruled. An elaborate answer was also prepared and filed by defendants. In the meantime, the executors paid the devisees of Amelia Baldwin their legacies under the will and prepared an amended answer, alleging that the acceptance of these legacies was an election to take under the will, and constituted an estoppel. The amended answer was not filed, but was held in readiness. The various motions were argued. Plaintiff took no proof in the action, and

at the February term, 1911, of the court, the action was finally dismissed.

There was also a suit against the executors for $1,500 for back taxes, and in this action they were represented by Halstead.

The commissioner's report of the settlement of the estate was filed at the May term, 1911, of the Nelson Circuit Court. It appears that during the pendency of this litigation the value of the estate in question was materially increased, and amounted to $203,812.18 at the time of the settlement. The commissioner allowed the executors 5 per cent on the amount of the estate paid out by them, or the sum of $10,166.53. He also allowed $2,250 for extraordinary services. The executors were given credit for the $7,500 attorneys' fee paid to F. P. Straus and Nat W. Halstead. The executors were also given credit for the sum of $300 paid John W. Lewis for services in the will contest in the Nelson Circuit Court only. Edelen & Davis, attorneys at law, of Frankfort, Ky., who were employed by the executors to represent them in the Court of Appeals, put in a claim for $1,000. This claim was allowed by the court. N. W. Halstead was allowed a fee of $7,500 for representing the executors in the fraud suit instituted by Mrs. Baldwin's executor, for services in the suit for back taxes, for advice to the executors with reference to the management and handling of the estate, and for services rendered in this action, and to be hereafter rendered. Among the credits given the executors by the commissioner was one for $431.96, expenses of witnesses in the will contest. To the commissioners' report of settlement, Mrs. Baldwin's executor and the other defendants filed 21 exceptions. A great deal of proof was taken with reference to the attorneys' fees, compensation of the executors, and other matters. Upon a final submission to the chancellor, certain exceptions filed by the defendants were sustained, while others were overruled. Among those sustained is the item of $431.96, expenses of witnesses. The court also reduced the allowance to the executors of $2,250 for extraordinary services, to the sum of $1,000. The exceptions as to the attorneys' fees were also overruled.

Upon the question of counsel fees in the will contest, the evidence for appellees is to the effect that the contest was an unusually bitter one, and involved practically every money transaction which had taken place in

the Barber and Baldwin families for many years. To prepare for the contest, numerous consultations took place between the attorneys and the executors, and many papers connected with the Barber estate had to be examined and considered. Many witnesses had to be consulted, and some of them were brought from distant states. Six attorneys, among them five of the ablest members of the Bardstown bar, and an able member of the Louisville bar, were employed by the contestees. The executors would not agree to give Halstead and Straus $10,000, but contracted on a basis of $7,500, as they believed that was a reasonable compensation. As there were many attorneys on the other side, John W. Lewis was employed to assist in the trial, and a fee of $300 paid to him. The executors, believing it to be their duty to uphold the will in all its particulars, prosecuted the appeals to this court. In view of the splendid array of counsel on the other side, they, upon the advice of counsel, employed Messrs. Edelen and Davis to assist in briefing the case in this court. Messrs. Straus and Halstead testify that a fee of $10,000 would have been a reasonable one. In addition to this, six other attorneys testified upon the question. Of these, three were prominent members of the Louisville bar, while three others are members of the Bardstown, Springfield and Munfordville bars. Two of these witnesses, Messrs. Atkinson and Lewis, testifying from actual knowledge, say that a fee of $7,500 was reasonable. Of the Louisville attorneys, one says that $7,500 is very reasonable, while the two others say that a fee of $10,000 would be reasonable. All say that a fee of $7,500 is very reasonable.

As to the fee of $1,000 allowed Edelen & Davis, some four or five attorneys, who were members of the Frankfort bar, and had practiced extensively in this court, testified that a fee of $1,000 was reasonable. There is no testimony to the contrary.

The attorneys for appellants gave their depositions upon the question of fees. While they state that under ordinary circumstances, and for an ordinary client, a fee of $7,500 in the will contest would not be unreasonable, yet they claim that in view of the fact that Mr. McChord was himself a lawyer, and had managed the estate, and was therefore in a position to advise counsel as to every transaction that took place, a fee of $5,000 would be sufficient for all counsel employed.

Upon the question of the allowance of $7,500 to Mr.

Halstead individually, the evidence is to the effect that owing to the fact that every transaction of the executor was called in question by appellants, the executors would not proceed to act except upon the advice of counsel. This necessitated frequent conferences and a large amount of correspondence. The suit by Mrs. Baldwin's executor against Mrs. Barber's executors and John R. Barber was a very dangerous suit, and would have taken from the estate to be administered upon more than one-third thereof. The construction suit and suit for settlement were brought in perfect good faith. The fact that one judge decided one way, while a special judge decided another, is evidence of this fact. No executor would undertake under such circumstances to make a settlement without the advice and direction of the court. Therefore, it was proper to bring the action and have the settlement made under orders of the court. The executors were constantly handling and loaning immense sums of money, and in doing this, they frequently consulted their counsel. Counsel gave his personal attention to the sale of the Bardstown real estate, and advised at the sales of the Louisville realty. Messrs. Halstead and Straus testify that a fee of $7,500 for Halstead's services in this connection is reasonable. Several other attorneys of prominence testify that a fee of $10,000 would be reasonable and that a charge of $7,500 would be a very moderate fee. On the other hand, the evidence of appellant's attorneys is to the effect that there was no necessity for the construction suit, and that the fraud suit simply affected John R. Barber. That Mr. McChord had the estate well in hand, and needed no advice; and that taking into consideration these facts, and that the estate was not benefited by the individual services of Halstead, a fee of from $300 to $500 would be reasonable.

It would extend this opinion to too great a length to consider in detail the numerous questions discussed in the briefs of counsel. We shall, therefore, briefly state our conclusions with reference to the main questions in issue.

It was the duty of the executors to resist the contest and to use all legal and honorable means to sustain the will in all its parts. To this end they had authority to employ counsel and to agree on the payment of reasonable fees. Their duties did not cease with the trial in the lower court. In view of the peculiar verdict ren-

dered by the jury, it was right and proper for them to prosecute an appeal to this court, and this without regard to whom the appeal might affect. Taking into consideration the amount of property involved, the length and bitterness of the litigation, and the character and result of the services performed by John W. Lewis, Straus and Halstead, and Edelen and Davis, in the will contest, we conclude that the fees allowed them were reasonable.

We conclude that the fee of $7,500 allowed Halstead for his individual services in the "fraud" construction and back tax suits, and for his services in advising and assisting the executors in the management of the estate is too large. Though the fraud suit was a dangerous one, and might have materially affected the amount of the estate in the executors' hands, it was not fought to a conclusion, but was dismissed by plaintiffs. While the arguments of motions and preparation of pleadings necessarily required some time and consultation with the executors, all the necessary information was easily obtainable; and as the case was neither tried nor set for trial, no preparation in this respect was necessary. The back tax suit involved but a small sum, and but little work. The construction suit involved simply a question of law, and while it is doubtless true that counsel devoted considerable time to the consideration of the case, both in the lower court and in this court, no unusual labor was required. The estate itself was well invested, and while counsel may have been frequently consulted by the executors, it does not appear that any questions of serious difficulty ever arose. Taking into consideration the character and value of counsel's services, we conclude that a fee of $3,500 would be entirely reasonable, and that the allowance should be fixed at this sum.

There can be no doubt that the estate was well and faithfully managed by the executors, and that through their efforts it was materially increased. One of the executors had been the agent of the testatrix. He knew the value of the estate and the character of the investments. It consisted principally of notes and real estate. While it is true that the executors defended the contest and fraud suits, and instituted suit for the construction of the will and the settlement of the estate, for which labor a fee of $1,000 was allowed on the ground of extraordinary services, we conclude, in view of the large size of the estate, the character of the investments, and

the ease with which it could be distributed, that the allowance of 5 per cent on the sum fixed by the chancellor is sufficiently large to pay for all services, ordinary and extraordinary, rendered by the executors. Because the statute authorizes an allowance not to exceed 5 per cent and an allowance for extraordinary services, is no reason why the statutory allowance should be made in every instance. The labor and difficulties incident to the administration of an estate must necessarily be taken into consideration. The ordinary labors performed by the executors in this case were not especially difficult. No doubt their chief labor was in connection with the various suits to which they were parties. Had it not been for these suits they would not have been entitled to the full compensation allowed by law. For that reason, we conclude that 5 per cent of the amount, allowed by the chancellor, is a reasonable fee.

During the progress of the proceedings, appellants filed a cross-petition against John R. Barber, by which they sought to have him contribute to the payment of their attorneys' fees for services rendered by them in securing to him one-half of the undevised estate. It is contended that inasmuch as the suit was prosecuted for his and appellants' joint benefit, he can not reap the advantage without paying his part of the burden. While it may be true that John R. Barber will receive more with the will broken as to the residuary estate, than he would have received had it been sustained, yet, his children would have received far more had the will been sustained in all its parts. John R. Barber was one of the contestees, and throughout the contest sided with the propounders. He preferred that the will as a whole be sustained. He was at all times opposed to the contest, even though it might be of greater benefit to him if the will was not sustained. Section 489, Kentucky Statutes, has no application to such a case. One can not involve others in such litigation against their known wishes and then charge them with counsel fees on the ground that the attorneys have served them in spite of themselves. Thirlwell's Admr., etc. v. Campbell, Guardian, etc., 11 Bush, 167. It follows that the chancellor properly held that John R. Barber was not individually liable for any portion of appellants' counsel fees or costs.

As the guardian at litem and corresponding attorney is not made a party appellee, and there is no appeal as

to him, his allowance as fixed by the chancellor will stand.

Without enumerating the other exceptions and objections as to the judgment, and the grounds relied upon for reversal, we deem it sufficient to say that all of them have been carefully considered, and as to them we see no reason for disturbing the judgment.

That part of the judgment fixing the fees of counsel in the will contest is affirmed. That part of the judgment fixing the allowance of the executors and of N. W. Halstead individually is reversed, with directions to enter judgment in conformity with this opinion. On appeal as to John R. Barber, and in all other respects, the judgment is affirmed.

One-half of the costs will be taxed against appellants; one-fourth against W. C. McChord and John R. Barber individually, and one-fourth against Nat W. Halstead individually.

Whole court sitting, except Chief Justice Hobson and Judge Nunn.