## McMillen's Exors., et al. v. McElroy, et al.

(Decided January 27, 1920.)

### Appeal from Marion Circuit Court.

1. Executors and Administrators—Allowance of Counsel Fees—Jurisdiction.—Where in a will contest the court entered an order merely announcing that an order might be entered dismissing the cause without prejudice, but provided in the same order that the cause be left on the docket until the motion for an attorney's fee could be disposed of, and the final judgment, fixing the allowance and directing its payment, provided that the cause be dismissed without prejudice except as to the motion for the allowance, the court was not without jurisdiction to determine the question of allowance on the ground that the case had theretofore been dismissed without prejudice.

2. Executors and Administrators—Allowance of Counsel Fees.—Notice of Motion—Sufficiency.—Notice by an attorney that on October 18th he would make a motion for an allowance for an attorney's fee for services performed in resisting the contest of a will, which notice was served on some of the parties on October 15th and accepted by others on October 16th, was not insufficient in view of the fact that the hearing of the motion was continued until October 29th, thus giving the parties in interest ample opportunity to contest the motion.

3. Executors and Administrators—Contest of Will—Employment of Counsel.—It being the duty of the executors to resist the contest

in good faith and to use all legal and honorable means to sustain the will in all its parts, they had authority to employ counsel and to bind the estate for the payment of a reasonabe fee.

4. Executors and Administrators—Expenditures—Counsel Fees—Method of Allowance—Practice.—The practice of permitting an executor to ask in a suit contesting a will for an allowance for counsel fees, to be fixed by the court and to be charged as costs and paid out of the estate, has been approved.

5. Executors and Administrators—Allowance of Counsel Fees.—Right of Attorney to Make Motion.—The motion for an allowance for services rendered the executor in resisting the contest of a will may be made in the contest suit in the name of the attorney who performed the services instead of in the name of the executor, since the attorney is the person to whom the fee will be paid, and therefore the real party in interest.

6. Executors and Administrators—Counsel Fees—Reasonableness—Manner of Hearing—When Complaint of Failure to Submit Issue to the Jury Not Available.—In such a case the court has the power to determine how the question of a reasonable allowance shall be heard and determined, and where the court itself hears the evidence and decides the question, the parties in interest cannot complain that the issue was not submitted to a jury where they failed to ask that this be done.

7. Executors and Administrators—Counsel Fees—Reasonableness.—The character, extent and result of an attorney's services rendered in resisting the contest of a will considered, and held that a fee of $2,500.00 was not unreasonable.

H. P. COOPER and HOBSON & HOBSON for appellants.

ED. C. O'REAR, H. S. McELROY, CHARLES C. BOLDRICK and P. K. McELROY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Laura Ray, a widow, married E. M. McMillen. By an antenuptial contract, E. M. McMillen, released all interest in her estate upon her death. Mrs. McMillen died from the effects of bichloride of mercury taken with suicidal intent. On July 22, 1915, and but a short time before her death, she made a will by which she gave her husband about one-third of her estate and left the remaining two-thirds in trust for the benefit of her son, Foster Ray, Sr., and his wife and children, the trust to continue until the youngest child should reach the age of twenty-one years. W. C. Rogers and Dr. Ed Kelly were named as executors, and Rogers was also named as trustee for Foster Ray, Sr. Prior to this time, Foster Ray,

Sr., had been adjudged of unsound mind and was then confined in the state asylum at Lakeland.

Thereafter, John McChord, as next friend of Foster Ray, Sr., threatened a contest of the will. The parties effected a compromise by which E. M. McMillen accepted the sum of $21,000.00 in full settlement of all claims against the estate. The compromise agreement was signed on July 12, 1916, by McMillen, W. C. Rogers, committee for Foster Ray, Sr., and John McChord, next friend of Foster Ray, Sr. For the purpose of making the agreement binding on the parties, Foster Ray, Sr., by his next friend, John McChord, W. C. Rogers, committee of Foster Ray, Sr., and E. M. McMillen brought suit against W. C. Rogers and Ed. Kelly, executors of Mrs. McMillen, Elizabeth Ray, Foster Ray, Jr., an infant under fourteen years of age, W. C. Rogers, trustee of Foster Ray, Jr., W. P. Myers, guardian of Foster Ray, Jr., and McMillen Ray, setting forth the compromise agreement and asking that it be approved by the court. The parties answered and on final hearing the compromise agreement was approved. In this proceeding H. S. McElroy was allowed a fee of $300.00.

On January 18, 1918, Foster Ray, Sr., and others brought suit against E. M. McMillen and others, contesting Mrs. McMillen's will on the ground of mental incapacity and undue influence. H. S. McElroy was employed by the executors and other defendants to resist the contest. He filed an answer denying the allegations of the petition and interposing a plea of *res judicata,* based on the judgment in the action above referred to by which the compromise agreement was approved, and Foster Ray, Sr., agreed not to institute any other contest. Several depositions were taken and other preparations made for trial. The case was continued at the April term of the court, and on the sixteenth day of the September term, which was October 10, 1918, the following order was entered:

"This day came contestees by attorney and moved the court to set the above styled cause for trial or to dismiss same for want of prosecution and no objection being made thereto, the court announced that an order might be entered dismissing said cause for want of prosecution and without prejudice; thereupon came H. S. McElroy attorney for the contestees herein and moved the court to allow him a reasonable fee for his services to the con-

testees herein and to set a day for hearing said motion and the court set Friday, October 18, 1918, for the trial of said motion and hearing of proof thereon and said cause is ordered left on the docket until the disposition of said motion and order entered relative to the allowance of said fee.''

On October 11, McElroy prepared a paper notifying the parties to the action that on October 18th he would move the court to allow him a reasonable fee for his services to the contestees. This notice was served on Foster Ray, Sr., and his wife, Lizzie Ray, on October 15th, and service thereof was accepted on October 16th by the executors and the trustee of Foster Ray and also by W. F. Myers, guardian for Foster Ray, Jr., and McMillen Ray. On October 19th, the hearing of the motion was continued until Tuesday, October 29th. On that day Foster Ray filed a special demurrer to the motion and proceeding on the ground that the court was without jurisdiction, that McMillen did not have legal capacity to sue or prosecute the proceeding, and that there was defect of parties. On the same day the court, after hearing the evidence on the question, fixed the sum of $2,500.00 as a reasonable fee for McElroy's services. Judgment was entered accordingly and the executors and others appeal.

There is no merit in the contention that the court was without jurisdiction to make the allowance because the case had then been dismissed without prejudice. In the order of October 10, 1918, above quoted, the court did not dismiss the case without prejudice and then take up the question of allowance, but merely indicated that an order might be entered dismissing the case without prejudice. At the same time a motion for an allowance was made by McElroy, and in the same order the case was left on the docket until the motion could be disposed of. Not only so, but the final judgment, fixing the allowance and directing its payment, provided that the cause be dismissed without prejudice except as to the motion for the allowance, thus clearly showing that the case was retained on the docket for the purpose of hearing and deciding the motion.

Nor can it be said that sufficient notice of the motion was not given. While it is true that the original notice stated that the motion would be made on October 18th, and the notice was not served on some of the parties until

October 15th, and accepted by others until October 16th, the motion was not heard on October 18th. On the contrary, the hearing of the motion was postponed until October 29th, thus giving the parties ample opportunity to contest the motion.

Under the rule prevailing in this state, it was the duty of the executors to resist the contest in good faith and to use all legal and honorable means to sustain the will in all its parts. To this end they had authority to employ counsel and to bind the estate for the payment of a reasonable fee. Baldwin's Exor. v. Barber's Exors., 148 Ky. 370, 146 S. W. 1124. The practice of permitting an executor to ask in the contest suit for an allowance for counsel fees to be fixed by the court, and to be charged as costs and paid out of the estate, has been approved; Phillips' Exor. v. Phillips' Admr., 81 Ky. 328; and we perceive no reason why the attorney who performs the services, and to whom the fee, if allowed, will be paid, and who is therefore the real party in interest, may not make the motion in his own name instead of in the name of the executor. Jones' Admr. v. Jones, 39 S. W. 251; May v. Walters' Exors., 149 Ky. 749, 149 S. W. 1014. In such a case the court has the power to determine how the question of a reasonable allowance shall be heard and determined, and where the court itself hears the evidence and decides the question, the parties in interest cannot complain that the issue was not submitted to a jury where they failed to ask that this be done.

Coming to the question of whether the allowance was reasonable or not, we find that Mr. McElroy testified in substance as follows: He was employed by the executors to resist the contest. The will was contested on three grounds, mental incapacity, undue influence and the claim that the will was not signed or acknowledged as required by law. Two depositions were taken, tending to show that the testatrix was in such condition that she did not know what she was doing at the time the will was executed, and, as a matter of fact, did not sign her name, but was assisted by Mr. Rogers, and that she did not say enough to indicate at any time that she acknowledged the will. Mr. McElroy then interviewed the parties present at the execution of the will, had frequent conferences with Dr. Kobert, Mr. Rogers and Dr. Ed. Kelly. He also had several conferences with E. M. McMillen, who was in and out of the room a few times when the will was exe-

cuted. He went to Louisville to see Mrs. Sarah Johnston, and after going to see her again in company with Dr. Ed. Kelly, took her deposition. He frequently interviewed all the parties and also about twenty witnesses, fifteen of whom he expected to call at the trial. He ran through the digest and syllabi of about one hundred cases, and after reading twenty-five or thirty cases in full, found two that he believed sustained his side of the case. In searching for evidence he spent a good deal of time, both in the day and at night, in interviewing the servants and all the people in the neighborhood for the purpose of determining whether or not the testatrix transacted her own business and to what extent. The responsibility of the whole case was on him, and he regarded the contest as a dangerous one because of the circumstances under which the will was written, the chief point in favor of the contestees being that Foster Ray, Sr., was a spendthrift and the estate would be dissipated if turned over to him. Considering the value of the estate, the length of his employment and the efforts which he had made in preparation for trial, he fixed his fee at $2,500.00. W. W. Spalding stated that in his judgment $2,500.00 was a reasonable fee. Judge H. W. Rives fixed the fee at from $2,000.00 to $2,500.00. P. K. McElroy fixed the fee at from $2,250.00 to $2,500.00. It was further shown that the estate, after the settlement with McMillen, amounted to about $70,000.00, and, of course, if the will had been broken, the whole estate would have gone to Foster Ray, Mrs. McMillen's only son, and his wife and children would have received no part of the estate. After hearing this evidence, the court fixed the allowance at $2,500.00. In resisting the allowance it is argued that the services in this action were no more than those performed in the compromise suit in which McElroy received only $300.00 for his services and that the judgment rendered in that case was *res judicata* and precluded Foster Ray, Sr., from instituting a second contest. The compromise suit was merely for the purpose of having the court approve an agreement already made and involved no preparation for a trial. Whether the judgment was *res judicata* or not, we deem it unnecessary to decide. It is sufficient to say that Mr. McElroy interposed that plea in the second contest, but acted with good judgment in not risking the case upon that plea alone, and in making a laborious preparation for a trial on the merits. While it is true that the second contest was dis-

missed without prejudice, and another suit may therefore be brought, the dismissal put an end to that suit, and, doubtless, to all other litigation contesting the will. Taking into consideration the value of the estate, the character, extent and results of the legal services performed, together with the dangerous character of the contest, we are not prepared to say that the allowance made by the chancellor was excessive.

Judgment affirmed.