## Douglas' Administrator v. Douglas' Executor et al.

(Decided February 26, 1932.)

ROBERT C. SIMMONS for appellant.

M. H. McLEAN for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

Ralph J. Douglas died a resident of Kenton county on January 24, 1928. A few days before his death he executed a will in which he nominated the appellee R. C. Stewart executor. Miss Jessie Stewart, daughter of R. C. Stewart and the testator's fiancee, was the principal beneficiary. R. C. Stewart produced the will in the Kenton county court for probate and qualified as executor. The testator's father and mother contested the will on the grounds of mental incapacity and undue influence, and on the trial the jury found against the will. The executor and some of the beneficiaries appealed, and this court affirmed the judgment. Douglas' Executor v. Douglas, 235 Ky. 121, 29 S. W. (2d) 637. A full statement of the facts developed at the trial appears in that opinion.

After the mandate issued, C. H. Schultze qualified as administrator of the estate of Ralph J. Douglas, deceased, and filed exceptions to the executor's report of his administration of the estate which had been filed in the Kenton county court. This report showed that the estate had been appraised at $240,400.67, that $27,959.77 in cash had come into the hands of the executor, and that he had disbursed $19,530.69 for debts, funeral expenses, and costs of administration, leaving in his hands $8,429.08 in cash. Among the items claimed by him as credits were $3,000 paid to himself as executor's fees, $2,000 paid to his attorney, M. H. McLean, for representing him as executor, $500 paid to the same attorney for representing the estate in a suit by the com-

monwealth for back taxes, $4,500 paid to M. H. McLean and S. D. Rouse as attorneys' fees in the will contest, and $360.60 costs incurred in that suit. These credits were allowed by the county court, but on appeal to the circuit court the amount allowed to the executor as fee for administering the estate while in his hands was reduced to $2,000. On this appeal the propriety of these claims allowed by the lower court, except the one for $500 paid to Mr. McLean for representing the estate in the back tax suit, is questioned.

It is appellant's contention that under the particular facts of this case the executor was not authorized to charge the estate with costs incurred and attorneys' fees paid in the suit contesting the will; that the fee allowed to him for administering the estate and the fee of $2,000 allowed to his attorney are both excessive. The appellee contends that the circuit court erred in reducing the executor's fee from $3,000 to $2,000 and he has taken a cross-appeal.

A number of exceptions were filed by the administrator in the county court to the report of the executor, but all of these have been eliminated by agreement except Nos. 7, 8, and 9. Exception No. 7 is to so much of the report as represents payment of costs and attorneys' fees in the will contest. It reads:

"Because the executor has charged the estate with costs of court, expenses incurred and attorney's fees paid in the defense of a paper purporting to be the last will and testament of the decedent, and after an adverse verdict in the Kenton Circuit Court against said paper carried said case to the Court of Appeals. Said effort was made chiefly to establish the right of the executor's daughter to a large interest in said estate under said alleged will, in procuring the execution of which said executor unduly exercised his influence over decedent. The only beneficiary under said will, in addition to the executor's daughter, for whose benefit said will was defended and said appeal was prosecuted, was Dr. C. N. Heisel, a legatee in a small sum, the other beneficiaries having repudiated same in open court. Said charges are not unreasonable as to amount, but the parties in interest excepting hereto, claim that at least four-fifths of said charges, if not all, should be paid by said R. C. Stewart, individually."

Exception No. 8 is to the credit for the claim of $2,-000 paid to the attorney for the estate, and exception No. 9 is to the credit claimed by the executor for fees due him.

It is conceded that the attorney is entitled to a fee of $1,000, and that the executor is entitled to a fee of not to exceed $1,250. Appellant also concedes that the charges to which exception No. 7 is directed are not unreasonable, but it is argued that, since it was established in the suit in which the will was set aside that R. C. Stewart, the nominated executor, had procured the execution of the will in which his daughter was the principal beneficiary by undue influence, he was not acting in good faith for the benefit of the estate when he sought to have the paper established as the last will and testament of the testator, and that therefore the estate was not chargeable with these expenses. The record in the contest case, including the transcript of the evidence, has been made a part of this record, and the evidence heard in that case is before us for consideration in determining the questions raised on this appeal.

In Douglas' Executor v. Douglas, supra, one of the grounds urged for a reversal was that there was no evidence of undue influence and that the trial court erred in submitting that question to the jury. The opinion merely said that there was some evidence from which a jury might infer that R. C. Stewart had exercised undue influence in the execution of the will and that the evidence on that point was sufficient to authorize the submission of the question to the jury and to sustain the verdict. The evidence as to the testator's mental incapacity was much fuller and more convincing than the evidence as to undue influence, and, while conflicting, was amply sufficient to sustain the verdict. Whether the jury found against the will on the ground of mental incapacity or of undue influence or on both grounds, of course, is not known. However, if it be conceded that they found against the will on the ground of undue influence, their finding is not conclusive on this appeal. The record in the contest case is before us, and may be re-examined for the purpose of determining whether or not Mr. Stewart acted in good faith in attempting to sustain the will. The will, considering the relations existing between the testator and members of the Stewart family, was not an unnatural one, and, from the slight evidence on undue

influence, represented by the testimony of interested witnesses, we are unwilling to say that Mr. Stewart was guilty of any conduct which would forfeit his rights as executor to defend the will.

Appellant cites and relies on Trevathan's Executor v. Dees' Executors, 221 Ky. 396, 298 S. W. 975; Slaughter's Executor v. Caldwell, 216 Ky. 261, 287 S. W. 720; Goode, Executor, v. Reynolds, Exr., 208 Ky. 441, 271 S. W. 600, 63 A. L. R. 631; Shields v. Shields' Executor, 192 Ky. 555, 234 S. W. 7; Wakefield v. Gilliland's Administrator, 18 S. W. 768, 13 Ky. Law Rep. 845; and other cases of similar import in support of his contention that the executor should not have been allowed as credits the costs incurred and attorneys' fees paid by him in defense of the contest of the will. But all of these were cases where the costs were incurred and the services of the attorneys were rendered to advance the interests of the personal representatives in their individual and not in their representative capacities. R. C. Stewart, the nominated executor of the will of Ralph J. Douglas, was not interested in his individual capacity and his duty as executor to uphold and defend the will was not affected merely because he may have had a personal interest in the outcome of the contest on account of his relationship to the principal beneficiary. It is a generally recognized rule that it is the duty of the nominated executor, acting in good faith, to maintain the will in all its provisions and to resist all efforts to set it aside. McMillen's Executors v. McElroy, 186 Ky. 644, 217 S. W. 927; Baldwin's Executor v. Barber's Executor, 148 Ky. 370, 146 S. W. 1124; Phillips' Executor v. Phillips' Administrator, 81 Ky. 328; Sims v. Birdsong's Administrator, 50 S. W. 993, 21 Ky. Law Rep. 75; Gilbert v. Bartlett, 9 Bush 49. The evidence before us is not sufficient to warrant the conclusion that the executor acted in bad faith in offering the will for probate and thereafter seeking to sustain it in the contest proceeding.

A large amount of evidence was produced by the propounders in that proceeding tending to show that the testator possessed the requisite mental capacity to make the will, and whether or not there was any evidence tending to show undue influence was a close question. Under the circumstances it was right and proper for the executor to prosecute an appeal to this court. Exception No. 7 was properly overruled.

Section 3883 of the Kentucky Statutes, provides:

"The allowance to executors, administrators and curators shall not exceed five per cent (5%) on all the amounts received and distributed: Provided, That upon proof heard in open court, upon proper notice to the parties in interest, the court may make an allowance when the executor, administrator or curator has, in the proper discharge of his duties in attending to administering and settling the estate in his hands, been required to perform extraordinary services; but such allowance shall not exceed in amount a fair compensation for the time occupied, and expenses incurred in protecting, attending to, collecting and settling such estate, and five per cent (5%) on all amounts received and distributed."

According to the report filed by the executor in the county court in final settlement of his accounts, he had received $27,959.77 cash and had disbursed $19,530.69, which included the fees paid to his attorneys and the fee of $3,000 paid to himself. He was entitled to a commission of 5 per cent on the amount distributed by him. Carpenter's Administrator v. Demoisey, 237 Ky. 628, 36 S. W. (2d) 27; Evans' Admr. v. McVey, 172 Ky. 1, 188 S. W. 1075. The cash left in his hands amounting to $8,429.08 was not distributed by him, but was merely delivered to the administrator. He is not entitled to the full commission on this amount but only to a reasonable commission for collecting and preserving it. The administrator will be entitled to a reasonable commission for distributing it, and the combined commissions should not exceed 5 per cent.

The remainder of this estate consists chiefly of stocks and bonds which were delivered in kind to the administrator. The value of this property is in dispute. The dispute centers principally on the value to be placed upon 500 shares of common stock of the John Douglas Company in which Ralph J. Douglas owned a remainder interest. Appraisers who appraised this stock for the executor fixed its value at $187,500 while the appraisers who appraised it for the administrator fixed its value at $95,000. This difference has no bearing of material importance on the question before us. The certificates of stock were in a safety deposit box in a bank in Cin-

cinnati and were never removed therefrom. The stock was never distributed by the executor, and at most a comparatively small fee would compensate him for his services in merely preserving the stock and delivering it to the administrator. Morton's Executors v. Morton's Executor, 112 Ky. 706, 66 S. W. 641, 23 Ky. Law Rep. 2079. Even where property of an estate is distributed by the personal representative in kind, he should not be allowed the maximum commission of 5 per cent of the value of the property, but only a reasonable compensation. Stratton v. Wilson, 170 Ky. 61, 185 S. W. 522, Ann. Cas. 1918B, 917. The sole ground upon which the executor is entitled to a substantial allowance in addition to 5 per cent of the money distributed by him is that he rendered extraordinary services in addition to his services in receiving and distributing property of the estate. There is evidence that he procured data for his attorney in defending the back tax suit and in preparing the federal estate tax report and the inheritance tax reports for the tax commissions of Kentucky and Ohio. He also rendered services to the estate in preserving and delivering to the administrator certain personal property both tangible and intangible.

We have carefully examined the evidence introduced by the executor to show the nature and extent of the services rendered by him, and have concluded that a fee of $1,800 is fair and reasonable. We have also concluded that the court erred in allowing the executor a credit of $2,000 for fees paid to his attorney for representing him in his representative capacity and that a fee of $1,000 is fair and reasonable. The attorney had been paid $2,250 in full for his services in the will contest and $500 for his services in the back tax suit. The other services consisted principally of advice to the executor in collecting, preserving, and distributing the assets of the estate, and were not of an arduous nature.

The appellee questions appellant's right to raise the questions here involved. This is upon the theory that appellant is an administrator de bonis non, and, on the authority of Warfield v. Brand's Administrator, 13 Bush (76 Ky.) 77; Yancy's Admr. v. Yancy, 183 Ky. 512, 209 S. W. 858, 3 A. L. R. 1249, and other like cases, an administrator de bonis non only has authority to administer upon the assets which have not been administered by his predecessor. When a will is set aside as

void, the result is that the estate occupies the same status as though no letters testamentary had been granted, and, when an administrator is appointed, he is not an administrator de bonis non, but an administrator of the whole estate, and is entitled to recover all the assets of the estate. Hamilton v. Williams, 133 Ky. 558, 118 S. W. 358, 21 L. R. A. (N. S.) 975; Wood's Admr. v. Nelson's Executor, 10 B. Mon. 229; Crow's Admr. v. Crow, 14 B. Mon. 476; 24 C. J. 1142. The matter as to the administration of the estate stands precisely where it would have stood had there been no will, except that acts done by an executor prior to a contest of the will are valid. Jones' Executor v. Jones, 14 B. Mon. 464.

The judgment is affirmed on the cross-appeal and reversed on the original appeal, with directions to enter a judgment in accordance herewith.