Faulkes et al. v. Brummett's Adm'r et al.

May 27, 1947.

Joe L. Price, Judge.

L. B. Alexander and David Reed for appellants.

Wheeler, Marshall & Shelbourne and Holland G. Bryan for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Mildred Faulkes, the appellant, sought to propound

an instrument she asserted to be the last will of R. H. Brummett, deceased. Sam King, the court-appointed administrator of the decedent's estate, and William Brummett and Lena Brummett Stivers, the two surviving children of the decedent, all appellees, stoutly opposed the same instrument.

Following a judgment of McCracken County Court rejecting this instrument, Miss Faulkes took an appeal to McCracken Circuit Court. Thereupon, following a verdict of a jury and a judgment of the circuit court against her, Miss Faulkes perfected this present appeal seeking reversal of that last judgment rejecting the purported will.

Appellant, in her brief, sets up 26 separate points, but we believe that her grounds for reversal can be condensed, for the purposes of this appeal, into her basic contention that the trial court erred in overruling her motion for a directed verdict.

R. H. Brummett, age 50, died of pneumonia in a Paducah hospital on October 23, 1945, after having entered that hospital on August 10, 1945, and after having executed, according to appellant, the questioned instrument as his last will there at the hospital on August 17, 1945.

The questioned instrument has both clarity and good form. It indicates on its face that it was signed on August 17, 1945, by R. H. Brummett as the testator and also by L. B. Alexander, one of appellant's present attorneys, and Eileen J. Davis, a student nurse at the hospital, as the two attesting witnesses. This instrument requires payment of debts and funeral expenses, gives appellant two pieces of real estate plus decedent's dog business plus $10,000 in cash, exclusive of inheritance taxes, and then nominates appellant as executrix without bond. This instrument makes no disposition whatever of the residual and larger part of decedent's personal property. Therefore, this instrument, although it does not mention the Brummett children, yet it permits most of the personal property of this estate to vest in the two Brummett children through a straightforward operation of law. The personal property has been appraised at a little more than $77,000, including $46,000 in cash.

The decedent was divorced a number of years ago from his wife, the mother of appellee children. After that divorce, he and his two children boarded together for a time in Paducah. But in more recent years, a gulf of indifference had seemed to open up between this father and his two children, and this gulf was begun, so appellees contend, with the connivance of Miss Faulkes. In any event, both Brummett children got married some few years ago, moved to distant cities, began families of their own, thereafter wrote and visited their father only at infrequent periods.

Now Mr. Brummett was in the dog business, that is to say he bought, sold, handled and shipped coon dogs, and in that business he appears to have accumulated most of his fortune. Around 1933 and while he and his two children were boarding together in Paducah, he employed Miss Faulkes, then about 18 years of age, to help him operate his dog business. Appellees contend that she, while helping to run the dog business, also helped to create a hedge of creeping estrangement between themselves and their father. Appellant contends that these two children always strongly resented her own entry into this relationship with their father, even though her part was, she says, solely that of a faithful, efficient, industrious, loyal, hired helper during the 12 year period preceding Mr. Brummett's death. Her evidence shows that she was an indefatigable worker, sometimes continuing all night on the job, and that for about 12 years she was both the mainspring and the sparkplug of Brummett's dog business.

The two main issues of this case were those of (A) whether the questioned document was the last will of R. H. Brummett and (B) whether that document, if established as the will, resulted from undue influence.

## Issue A.

Substantial evidence was produced to show that this document was duly executed as the actual, authentic, genuine, intended, last will of Mr. Brummett. No one denied the Brummett signature. No one attacked the Brummett testamentary capacity. L. B. Alexander, a practicing attorney for 35 years and a former president of Kentucky State Bar Association, drew this document and witnessed its execution by Brummett. No one at-

tacked the Alexander veracity. Eileen J. Davis, a young student nurse at the hospital, was the other attesting witness to this document. Hers was an unwilling and an uncertain testimony on this trial. Yet she did not deny her signature. Neither did she deny her presence at some sort of a documentary solemnization by Brummett upon the occasion in' question. While the statute requires attestation of wills by two witnesses, yet we have held in several cases that a will may be legally probated on the strength of only one of those witnesses if the other witness is missing or is defective in memory or is otherwise incapacitated. Polley v. Cline's Ex'r, 263 Ky. 659, 93 S. W. 2d 363; Rowland v. Holt, 253 Ky. 718, 70 S. W. 2d 5.

These appellees produced some witnesses tending to show that Brummett stated after the date of this document and before his death that he had not made his will. If he made such a statement, its utterance was well explained by the manifestly unfinished state of his testamentary disposition as shown by this document itself. He had not disposed of the larger part of his personal property. He had intended, so Mr. Alexander explained, to add to this document certain, contemplated clauses of complete disposition of all the residual items of his estate. Therefore, Brummett, according to the conception lingering in his own mind up until death, had not made his will inasmuch as he had not completed its full and final expression. The probative value of this utterance of Brummett about not having made a will appears to have been completely deflated to the point of annihilation in the face of this document itself, which was carried into court with undenied signature, with legal form, with solemnized execution, with fulfillment of statutory requirements. This utterance of Brummett about not having made a will may have furnished a frail scintilla to support appellees' theory that this document was not the Brummett will. But a mere scintilla of evidence is not enough evidence to authorize a court to submit an issue to a jury under our present-day law. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877. Therefore, we must conclude that appellees produced no probative evidence to support their theory relating to issue A, the theory that the questioned instrument was not the last will of R. H. Brummett.

## Issue B.

And now having determined that all the evidence of probative value established this questioned instrument as the Brummett will, we now reach the second question, that of whether appellees furnished sufficient, legal evidence to prove that this will resulted from undue influence.

Appellees furnished some proof that Miss Faulkes was Brummett's mistress, that she was fully paid for her 12 years as his assistant, that she was jealous of themselves, that she was openly hostile toward themselves, that Brummett had stated that she knew enough on him to send him to the penitentiary. That was, in substance, all of the evidence for appellees concerning undue influence. Appellant denied or offered to deny all of such evidence.

No one stated that Miss Faulkes ever discussed with Brummett the making of a will. No one stated that she knew about this will before Brummett's death. No one asserted that she was present at the preliminary consultation relating to the will or at the drafting of the will or at the execution of the will. No one proved that Miss Faulkes exercised the persuasion of a Delilah or that Mr. Brummett exemplified the susceptibility of a Samson. According to all the evidence, Brummett was never a vacillating man but was ever a self-intentioned man.

It is undeniably true that the female sex does have the power in many instances to exercise a dominating influence over the male sex. The peacock fans out the irridescent glory of his plumage more brilliantly when the peahen stands beneath the nearby mulberry bush. That is female influence. Edward VIII gives up his throne as a woman stands in the shadows. That is female influence. King David deliberately sends a man to certain death in the front line of battle as a shapely woman, who bathed across the way, darkens the doorway of the palace. That is female influence. Nevertheless, under the law of this state as we have found it and followed it, there is a distinction between passive and coercive influence, between due and undue influence, between reasonable and unreasonable influence, between opportunity and exercise of influence.

Undue influence is that exercised power which operates to destroy free agency and constrains a person to do against his will that which he would otherwise refuse to do. Yet any reasonable influence obtained by acts of kindness or by argument addressed to the understanding is not in law an undue influence. Chrisman v. Quick, 174 Ky. 845, 193 S. W. 13. There are few of us indeed who do not at some time follow the suggestions made by members of our families, but undue influence cannot be predicated on this fact where the suggestion is not unreasonable. Schrodt's Ex'r v. Schrodt, 181 Ky. 174, 203 S. W. 1051. The undue influence for which an instrument will be annulled must be such that the party who made such instrument had no free will but stood in vinculis because of such influence. It must amount to such force or coercion as to destroy free agency. 9 Am. Jur. 365. To show undue influence sufficient to invalidate a will, it is not enough that there was an opportunity to exercise such influence, or a possibility that it was exercised, but there must be substantial evidence that it actually was exercised. Jones v. Beckley, 173 Ky. 831, 191 S. W. 627.

It is surely wrong for courts and juries to substitute their own wills for the wills of other persons who have attempted to make disposition of their worldly goods according to their own fixed purposes before death has closed their mouths and reduced them to complete impotency of further self-assertion. Regardless of our personal view of what Mr. Brummett should have done, we must entertain the judicial view that he had a perfect right to do what was done.

We do not believe that appellees furnished any evidence that this testator's free agency was destroyed or that he was put in vinculis or that he was constrained to do that which he would not have done except for the outside pressure of undue influence. We believe that appellees proved at most that there was an opportunity for undue influence. Therefore, it must follow that the trial court committed reversible error in refusing to direct a verdict for the appellant.

Under the rule prevailing in this state, it was the duty of this executrix to establish and uphold this will and to use all legal and honorable means to those ends.

Accordingly, she had a right to employ counsel and to bind the estate for the payment of reasonable fees and the necessary expenses. Baldwin's Ex'r v. Barber's Ex'rs, 148 Ky. 370, 146 S. W. 1124. Due cognizance of this principle should be taken in the termination and settlement of this estate.

Wherefore, for the reasons hereinabove indicated, the judgment is hereby reversed for proceedings consistent with the views expressed herein.