Lexie BURKE, Appellant,

v.

Donald E. BURKE and Beatrice Bates, Appellees.

No. 89–CA–723–MR.

Court of Appeals of Kentucky.

Oct. 12, 1990.

Rehearing Denied Jan. 25, 1991.

Francis D. Burke, Pikeville, for appellant.

Lawrence R. Webster, Pikeville, for appellees.

Before HOWERTON, C.J., and CLAYTON and McDONALD, JJ.

McDONALD, Judge.

James Heber Burke died testate in Pike County on August 17, 1985. His will left everything to his wife of one month, Lexie Burke, and appointed her executrix of his estate. Heber's children, Beatrice Bates and Donald Burke, challenged the will, claiming undue influence and lack of testamentary capacity. A jury trial resulted in a verdict that the document probated was not the will of Heber Burke; Lexie's motion for a judgment notwithstanding the verdict was denied, and she appealed.

Heber Burke originally hailed from Pike County but he spent most of his life in Ohio, where he accumulated a relatively substantial amount of property, including fourteen pieces of real property, all acquired with the substantial contribution of his wife. On February 19, 1985, his wife of 53 years, Evelyn, died. They had two children, four grandchildren and four great-grandchildren. Much of the evidence concerning Heber's alleged mental incapacity stems from his behavior following Evelyn's death. According to the plaintiffs' witnesses, during this time Heber drank heavily and constantly; had frequent crying spells; repeatedly visited his wife's grave; tried to dig her up so that he could talk to her; and had hallucinations, talking to people who weren't present and claiming that Evelyn visited him regularly at night, which frightened him into sleeping in the attic.

After several months of this, around the first of June, 1985, Heber moved to Pike County and bought a house there. Later that month he told his children he was going to marry Lexie Damron, a widow who attended the same Baptist church as

he. Lexie and Heber were married on July 20. On the 27th, Heber executed the will which is the subject of the present controversy. He died three weeks later.

After the plaintiffs had presented their evidence, witnesses for the defense—friends and relatives of Heber's who had known him in Pike County—testified that they had never known Heber to drink and that, while he seemed saddened by his first wife's death, he was not incapacitated by it. Lexie herself testified that she had never seen Heber drink or cry. Her argument on appeal, as before the trial court, is that this case should never have reached the jury as there was a "complete lack" of evidence of either undue influence or incapacity.

A survey of the law on this subject yields a series of contradictory statements and policies. On the one hand courts stoutly proclaim the policy of carrying out the wishes of the deceased, even if they are arbitrary or unfair. "[T]he courts guard jealously the rights of all rational people, including the aged, the infirm, the forgetful and the queer, to make wills sufficient to withstand the attacks of those left out and those dissatisfied with the expressed desires of the departed." *Tye v. Tye*, 312 Ky. 812, 229 S.W.2d 973, 975 (1950); citing *Kentucky Trust Co. v. Gore*, 302 Ky. 1, 192 S.W.2d 749, 752 (1946). The testator must have sufficient mind to know his property, the objects of his bounty and his duties to them, *Waggener v. General Association of Baptists*, Ky., 306 S.W.2d 271, 273 (1957); but he is perfectly free to ignore the latter if he is otherwise of sound mind. "Every man possessing the requisite mental powers may dispose of his property by will in any way he may desire, and a jury will not be permitted to overthrow it, and to make a will for him to accord with their ideas of justice and propriety." *Cecil's Ex'rs. v. Anhier*, 176 Ky. 198, 195 S.W. 837, 846 (1917); *see also Faulkes v. Brummett's Adm'r*, 305 Ky. 434, 204 S.W.2d 493, 496 (1947).

It has also been said that to invalidate a will on the ground of undue influence, the contestant must show more than the mere opportunity to exercise it. *Bo-dine v. Bodine*, 241 Ky. 706, 44 S.W.2d 840, 843 (1931). There must be some specific evidence of circumstances from which it can be reasonably inferred that undue influence was in fact exercised. *Copley v. Craft*, Ky., 312 S.W.2d 899, 900 (1958). Furthermore, "reasonable influence obtained by acts of kindness or by argument addressed to the understanding is not in law an undue influence." *Faulkes, supra.* To justify setting aside a will the influence exercised must be such that it "obtains dominion over the mind of the testator to such an extent as to destroy his free agency in the disposal of his estate, and constrains him to do that which he would not have done if left to the free exercise of his judgment." *Copley, supra.*

After issuing these stern admonitions, however, the law reverses itself somewhat to lower the contestant's burden of proof when allegations of undue influence are coupled with an unequal or unnatural disposition, allegations of mental incapacity, or both. *See Waggener, supra* at 274; *Pardue v. Pardue*, 312 Ky. 370, 227 S.W.2d 403, 406 (1950). Thus, a combination of these will usually suffice to overcome a directed verdict. "[W]hen slight evidence of the exercise of undue influence and the lack of mental capacity is coupled with evidence of an unequal or unnatural disposition, it is enough to take the case to the jury." *Gibson v. Gipson*, Ky., 426 S.W.2d 927, 928 (1968).

We realize that in many if not most cases, it would not be considered "unnatural" to leave everything to one's spouse to the exclusion of one's children. However, the deceased wife, Evelyn, made life-long contributions to the accumulation of Heber's estate and, in the ordinary sense, it is imperceptible that her children would be turned away empty-handed. But the law would permit such harshness unless, by close scrutiny, other factors demonstrate an unacceptable and unnatural disposition of one's estate.

Herein, the jury was presented with a scenario in which the entire relationship between Heber and Lexie, from courtship to death, was of a scant three months'

duration. One of the "badges" of undue influence is "a lately developed and comparatively short period of close relationship" between the testator and the principal beneficiary. *Belcher v. Somerville,* Ky., 413 S.W.2d 620, 622 (1967). There was evidence, which the jury could have believed, of other "badges" of undue influence, including a will arguably unnatural in its provisions, as well as participation by the beneficiary in the physical preparation of the will (which was drawn up by Lexie's lawyer, and in her presence). There was also at least some evidence of mental incapacity in the form of excessive alcoholism and hallucinations. *See Duval v. Duval,* 249 Ky. 186, 60 S.W.2d 351 (1933); *Osborn v. Paul,* 272 Ky. 694, 114 S.W.2d 1134, 1138 (1938) (wills invalidated on grounds of incapacity "largely supported by the fact of excessive use of intoxicating liquor by the testator"). This proof was sufficient to take this case to the jury.

It is certainly true that there was contrary evidence that Heber was of sound mind and uninfluenced by anything but his own wishes. We are not unmindful of the possibility that the jury invalidated this will simply because it seemed unfair. Nevertheless, "when there is substantial evidence to support a verdict, though we of the courts may think it outweighed, we are compelled to uphold the jury's conclusions." *Roland v. Eibeck,* Ky., 385 S.W.2d 37, 40 (1964).

For the foregoing reasons, the judgment of the Pike Circuit Court is affirmed.

All concur.