## Thompson, et al. v. Eversole.

(Decided February 18, 1915.)

### Appeal from Laurel Circuit Court.

1. Contracts—Burden of Proof—When Contract Denied.—In a suit on a contract alleged to be in writing, the burden of proof is on the plaintiff when the defendant denies the execution and delivery of the contract.

2. Pleading—Contracts.—If a party desires to rely on a written contract to support his action he should set it up in his pleading.

O'REAR & WILLIAMS for appellants.

SAM C. HARDIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In October, 1911, Thompson and his wife brought a suit in equity against Eversole, in which they averred that on January 19, 1907, they entered into an executory contract with Eversole, which contract was signed by both of them and accepted by Eversole, under the terms of which they sold and agreed to convey to him the real estate described in the petition for the sum of $2,500. They further averred that they put him in possession of the property on the day of sale, and were at all times able and willing to convey to him a good title, but that, although he had been in possession of the property from the date of sale, he had not paid any part of the purchase price except $500. They asked for judgment against him for $2,500, with interest from January 19, 1907, to be credited by $500 paid February 11, 1907, and for a lien on the property to secure the payment of the debt.

It might be here observed that the deed tendered by the Thompsons to Eversole showed that the title to a part of the property was in Mrs. Thompson, the title to the other portion being in Thompson.

To this petition Eversole filed an answer in which he denied the purchase of the property for $2,500 and also the title of the Thompsons, but admitted that he had purchased the property described in the petition under a verbal contract of purchase and subsequent to the verbal contract had paid $500 of the purchase price. He further averred that at the time he paid the $500 the Thompsons executed to him a bond for its return in the

event they failed to execute and deliver to him a good deed within a reasonable time thereafter. He also set up the pendency of another suit by him against the Thompsons, in which he sought to recover the $500 paid, and asked that that action and the one brought against him by the Thompsons be consolidated.

To this answer a reply was filed controverting the affirmative averments, and thereafter it was consolidated with the suit that had been brought in October, 1911, by Eversole to recover the $500 that he had paid to the Thompsons on the purchase price of the land in question.

This suit by Eversole against the Thompsons was brought on the theory that the Thompsons were unable to make a good deed and had failed to tender one within a reasonable time, and, therefore, Eversole was entitled to recover on the bond executed to him by the Thompsons the $500 that he had paid on the purchase price.

After the suits were consolidated the Thompsons filed an amended petition in which they asked that if the sale be set aside they should have judgment against Eversole for rent of the property during the time he had it in possession.

The only evidence in the record is the deposition of Eversole and the deposition of Thompson. Eversole said, in substance, that he purchased the property from the Thompsons under a verbal contract, and afterwards, on January 19, 1907, when he paid the $500, Thompson gave to him the following writing, which was the only writing between them in respect to the property:

"Whereas, Abijah Eversole has this day purchased of me a house and two lots near the depot in London, Ky., being the same lot adjoining upon which I lived in London known as the Dr. Matson lot and the C. M. Randall lot, and whereas, said Eversole has agreed and promised to pay me $2,500 for said property, $500 of which is in hand paid, the receipt of which is hereby acknowledged, and the remainder to be paid in six and twelve months in equal installments of $1,000 cash, and whereas, said H. C. Thompson referred to above as of the first person cannot at this time make a title to said property acceptable to said Eversole, and whereas, said Eversole demands indemnity and security for the $500 this day paid to said Thompson, and whereas, said Thompson is willing to give said indemnity:

"Now, therefore, this contract agreement and understanding between H. C. Thompson and R. M. Jackson, his security, in consideration of the premises do hereby undertake, obligate and bind themselves that the said H. C. Thompson will, within a reasonable time, execute and deliver and acknowledge a good, sufficient and satisfactory title to said Eversole for said property and all appurtenances with clause of general warranty, and if he fails to do so, then the said Thompson and Jackson hereby agree and promise to pay back to the said Eversole the $500 this day paid to said Thompson by said Eversole, together with all interests and costs that may attach thereto.

"It is further agreed and understood by the said Thompson and Eversole that the said Thompson turn over to and place said Eversole in immediate possession of said property and all its appurtenances.

"In witness whereof, the said H. C. Thompson and R. M. Jackson have hereunto subscribed their names this the 19th day of January, 1907. (Sgd.) H. C. Thompson, R. M. Jackson."

He further said that Thompson did not tender or offer to tender any deed to him until September, 1911, and that he notified Thompson in November, 1910, that he would not take the property.

Thompson testified that on January 7, 1907, he sold to Eversole the property in question, part of which was owned by himself and part by his wife, and that on that date he gave to Eversole a title bond acknowledged by himself and wife. The title bond, however, is not in the record, and it does not appear what disposition was made of it, as Eversole says he never received it. Thompson further said that on January 19, 1907, when Eversole paid the $500, he gave him the bond before mentioned. That he did not know until he received the letter from Eversole in 1910 that he would not take the property, the possession of which he had had from the time of the sale in January, 1907, and that Eversole had never demanded a deed from him.

With the record in this condition the court adjudged that Eversole should recover of Thompson $500, with interest from January 19, 1907. He further charged Eversole with $486 for rent, subject to a credit of $235 for repairs, insurance and taxes, leaving a balance due on rent of $251, which he directed to be credited on the judgment for $500 as of January 19, 1907.

From this judgment Thompson appeals, insisting that he should have specific performance of the contract he claims to have made with Eversole. Or, in other words, a judgment for $2,500, and interest, to be credited by $500.

It will be observed that the title to the property sold to Eversole was in Thompson and his wife. And it will be further noticed that Thompson testifies that he and his wife, on January 7, 1907, executed and delivered to Eversole a title bond for this property, which was acknowledged by his wife, while Eversole denies that he ever received any title bond or any writing except a bond of indemnity. Thus, according to the evidence of Thompson, the purchase and sale was evidenced by a writing, while, according to Eversole, the contract was verbal.

Upon the issue as to whether a title bond was executed, we think the burden of proof was on Thompson and that he failed to make out his case. To enforce specific performance of the contract it was necessary that Thompson should show that a written contract had been entered into, and when this was denied, he assumed the burden of showing the fact of the execution and delivery of the contract. If such a contract had been executed in the manner Thompson states, he should have shown it by the officer who took the acknowledgment of his wife or by other witnesses or circumstances, but his statement that it was executed is not supported by any other evidence or any other circumstances.

It is, however, now insisted in his behalf that the bond given to Eversole on January 19th is a sufficient memorandum of the contract to support the action of Thompson for specific performance.

Without expressing any opinion as to the sufficiency of this writing for the purpose indicated, we think it a sufficient answer to the argument of counsel to say that Thompson did not in his pleading or indeed in his evidence set up this bond as evidencing the contract he had with Eversole. He did not in any manner or form rely on this paper as constituting the contract between them, and this being so, he cannot avail himself in this court of any rights that this bond might have given him. If he wanted to depend on this bond as evidencing the contract, he should have set it up in the lower court as a basis of his cause of action.

Under the circumstances, we think the court adopted the proper method of settling this controversy by treating the contract between the parties as verbal and adjusting their rights on equitable principles.

The judgment is affirmed.