# Louisville Trust Company v. Fidelity & Columbia Trust Company, Administrator, with the Will Annexed of the Estate of Mary Lily Bingham, Deceased.

(Decided May 29, 1925.)

## Appeal from Jefferson Circuit Court.

1. Executors and Administrators—Administrator Appointed Over Objection Not Allowed Counsel Fees in Endeavoring to Maintain His Appointment.—Administrator, securing appointment by .court over objection of decedent's husband and who was not designated by decedent, held not entitled to expenses incurred in endeavoring to sustain arbitrary appointment, especially where he qualified at time when nominating order was suspended by pending motion to set it aside.

2. Executors and Administrators—Qualification, Pending Motion to Set Aside Nominating Order, Not a Necessity Justifying Expenses in Attempting to Sustain Appointment.—Where administrator was appointed over objections of decedent's husband, qualification, after motion to set aside nominating order, held not a necessity entitling it to expenses incurred in attempting to maintain appointment, in view of power of court to appoint a curator pendente lite, under Ky. Stats., section 3901.

3. Executors and Administrators—Administrator Not Entitled to Compensation for Services After Suspensive Appeal from Appointment, in Absence of Good Faith.—Administrator appointed over objection of one having superior rights is not entitled to compensation for acts of administration after suspensive appeal from order of appointment, in absence of good faith.

4. Executors and Administrators—Administrator Not Entitled to Compensation for Period Between Motion to Set Aside Appointment and Order Sustaining Motion on Appeal.—Where administrator was appointed by court over objections of decedent's husband, and qualified after motion to set aside appointment had been made, but did not perform any specific administrative acts during period prior to sustaining motion to set aside appointment on appeal to circuit court, compensation could not be allowed.

5. Executors and Administrators—Supersedeas on Appeal from Orders of County Judge Held to Suspend Right to Perform as Administrator.—Supersedeas, issued by clerk of circuit court, on appeal from order of county judge in appointment of administrator, held to suspend right to perform as administrator during pendency of appeal.

6. Executors and Administrators—Supersedeas in Appeal from County Court to Circuit Held to Suspend Right to Perform Administrative Functions.—In view of Ky. Stats., section 978, authorizing appeal from county court to circuit court in probate proceedings, and Civil Code of Practice, section 724, providing for

stay of proceedings on the appeal on execution of bond, super-
sedeas on appeal from county to circuit court from order nominat-
ing administrator held to suspend right to perform administra-
tive functions, and therefore compensation against estate for such
acts could not be allowed.

W. W. DAVIES for appellant.

HELM BRUCE, JOSEPH LAURENT and BRUCE, BULLITT &
GORDON for appellee.

· OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This case is an aftermath of the one of Louisville
Trust Company v. Bingham, 178 Ky. 573 in which it was
held that the Jefferson county court was in error in at-
tempting to appoint the Louisville Trust Company coad-
ministrator with the will annexed of Mrs. Mary Lily
Flagler Bingham, the deceased wife of Robert W. Bing-
ham, who died a resident of the city of Louisville on July
27, 1917. Prior to her marriage to Mr. Bingham she
was the widow Flagler and resided in the state of
Florida, where she' executed her will, naming two resi-
dent citizens of that state as the executors of it. She
afterwards added codicils to her will, and on or prior
to September 4 following her death the will and codicils
were probated in the Jefferson county court, but the
nominated executors in the original will were disqualified
from serving in this state because of their nonresidency
and the only resident individual possessing preferred
qualifications for appointment as administrator with the
will annexed was the surviving husband, Mr. Bingham,
who declined to serve. On the last date mentioned, he
with the knowledge and consent of the named nonresi-
dent executors designated the defendant and appellee
herein, Fidelity & Columbia Trust Company, of Louis-
ville, Kentucky, as a suitable representative of his wife's
estate and asked the court to appoint it to that position.
The court expressed a willingness to sustain that motion
but at the same time announced that he would also
appoint the appellant, Louisville Trust Company, plain-
tiff below, as coadministrator with Mr. Bingham's nomi-
nee. He immediately objected to the appointment of
plaintiff and there is evidence in the record that his
objections were set for hearing the next morning, at
which time it was discovered that the appointment
had already been made and was put upon the order
book and signed by the judge; but whether so or not,

on the next morning, September 5, Mr. Bingham appeared with his attorneys and moved that the order making such appointment be set aside and the hearing of that motion was set forward to September 19, a space of twelve days. On the day designated the motion was heard and overruled and on the next day an appeal was prosecuted to the Jefferson circuit court from the original order making the appointment, as well as the one overruling the motion to set it aside, pursuant to the right conferred by section 978 of our present statute. At the same time an appeal bond was executed in the circuit court and supersedeas issued and was served on the judge of the Jefferson county court and also on plaintiff, all of which was done on September 20, 1917.

Pending the motion to set aside plaintiff's appointment, and on September 8, three days after the motion was made, it qualified by executing bond and taking the required oath and immediately selected as its attorney to represent it in its fiduciary capacity the same person who had conversed with it in regard to its possible appointment as Mrs. Bingham's local personal representative and who was in attendance at the county court hearing, and who also was a strong personal and political friend of the county judge and he had conversed with that officer relative to the proper course to pursue in the appointment of personal representatives for the estate before the question was presented in court. After the appeal to the circuit court that attorney with two others began the preparation of plaintiff's defense on appeal. They appeared in the circuit court, where the orders of the county court were reversed, and from which an appeal was prosecuted to this court, followed by an affirmance of the judgment of the circuit court which is the reported opinion, *supra,* in 178 Ky. After the mandate from this court issued plaintiff herein relinquished its efforts and turned over to the Fidelity & Columbia Trust Company a box containing jewels of Mrs. Bingham, which it had on deposit in its safety vault from and after the day succeeding her death and which box was left with it as bailee with one key retained by the depositor and the other by plaintiff.

Afterwards this equity action was brought by plaintiff against the Fidelity & Columbia Trust Company as sole administrator of the estate of Mrs. Bingham for a settlement of its acts and doings pending the controversy of its appointment, and to recover compensation for its

services and expenses as well as the services of its attorneys, the chief item of which in the latter claim was counsel fees in representing plaintiff in the contest over its appointment, but in it there were also included services for advice of counsel during that time, and $2,500.00 paid to a New York law firm in an effort to procure for plaintiff the appointment as ancillary administrator in that state, but which proceedings progressed no farther than their inauguration. The petition, as amended, claimed $25,000.00 for services of local counsel, the larger part of which, as we have stated, was rendered in an effort to sustain plaintiff's appointment by the Jefferson county court; $2,500.00 was claimed for the New York lawyers; about $4,500.00 was demanded as reimbursement of plaintiff for premiums paid to surety companies upon its bond which it executed before the county court and other items for expenses incurred, and it also asked for compensation and commission on something over $2,100,000.00 of property which it claimed to have administered upon before its final ouster by this court's opinion. That sum was composed of $608,000.00, the value of the jewelry which it had in its possession in the manner hereinbefore stated, and a deposit account in a New York bank of about $1,500,000.00 which it alleged that it preserved for the estate and kept the Florida representatives from appropriating or otherwise consuming it. The answer denied all of the material averments of the petition and contested the right of plaintiff to recover any sum whatever for any of the items mentioned in its petition. The cause was referred to a special commissioner with authority to take proof, which he did, and subsequently reported disallowing all of plaintiff's claims. It thereupon filed exceptions to the report, which were heard by the chancellor, and he confirmed the report and dismissed the petition from which this appeal is prosecuted.

The questions presented and argued here are: (1), whether plaintiff as the nominated administrator by the county judge, and which nomination was against the consent and over the protest of those having the right to select the personal representative, may nevertheless accept such nomination and qualify itself pending a motion to set aside its appointment and then charge the estate with its counsel fees in bitter litigation contesting its appointment resulting in its defeat? (2), whether plaintiff may recover as compensation for itself or

attorneys in looking after the estate between the time of its qualification in the manner stated and the appeal to the circuit court and the superseding of the county court orders? and (3), whether after such appeal and superseding of the judgment it could continue to act and recover for its services as well as those of its attorneys? We will consider the questions in the order named.

1.    At the beginning of our consideration of question (1) it should be kept in mind that our opinion in the 178 Ky. case held, in substance, that Mr. Bingham had the right to designate a suitable person for appointment by the Jefferson county court and that he did designate such person; that it was the duty of the county court to adopt that designation and not to appoint plaintiff as co-representative in conjunction with that designated suitable person, and that the court's action in so doing was wrong from the beginning, which necessarily had the effect to so characterize the acts of all persons endeavoring to uphold that wrongful appointment by the county court.    It is true that we also held in that opinion that there *might* be cases of such peculiar circumstances that the county court would be authorized in appointing more than one personal representative, but that the case under consideration was not one of them and for that reason the judgment of the circuit court so holding was affirmed. With this brief reference to our opinion in the case referred to, we will now proceed to consider question (1) above.

Supporting the right of plaintiff to recover its counsel fees in its efforts to maintain its nomination or appointment by the Jefferson circuit court, we are cited to the text in 18 Cyc. 76, saying, "The better opinion appears to be that an executor or administrator is entitled to reimbursement for the just and reasonable legal expenses incurred in procurnig his appointment or qualification in the probate court, although in some jurisdictions this is denied."    In support of the "better opinion" part of the excerpt, note 59 to the text cites Ex Parte Young, 8 Gill, (Md.) 285; some opinions from intermediate New York courts, and some Ohio circuit court opinions.    Other cases not found in the note and relied on by plaintiff's counsel are In Re Page, 107 N. Y. 266, and Brown v. McGee, 107 Wis. 289.. In the Gill case the widow was appointed, and so far as the record shows without opposition, as administrator of her deceased hus-

band. Afterwards, others who claimed a superior right instituted proceedings to contest her appointment, but in which she was successful, and from that fact the court upheld her right to charge the estate with her counsel fees and expressly stated that the case was analogous to a successful effort on the part of a nominated executor to probate the will and that inasmuch as the widow was successful in maintaining her right to administer she was allowed her reasonable counsel fees.

The Page case was one where the order appointing the representative (the public administrator) by the probate court was made without the objection of anyone present and where, under the laws of New York, it was the duty of such public administrator to take charge of the estate under certain facts and circumstances (found to exist there) until the proper person applied for administration and it was for services rendered by such public administrator appointed under those circumstances that the allowances were claimed and upheld. In the Brown case (Wis.) the will of the deceased was probated in the wrong county, i. e., one other than the residence of the testator at the time of his death, and upon that probate and at the request of the widow, Brown was appointed and qualified as administrator and at once entered upon the performance of his duties, there being nothing to indicate that the proceedings were in the least irregular. Afterwards an appeal was prosecuted to the circuit court and upon the trial in that court for the first time the question of residence of the decedent was raised. The court allowed Brown his expenses incurred while acting as such administrator and before the invalidity of the order appointing him was manifested. Clearly, the Gill and Page cases are radically different in their facts from those appearing in this record. In the one, the contesting fiduciary was successful in establishing his right and which fact was emphasized by the court in its opinion, and in the other the representative to whom the allowances were upheld was but discharging his express statutory duty in rendering the service for which compensation was allowed; while in the Brown case the personal representative served the estate during a period when there was no cloud resting upon his title and when no one appeared upon the scene to question his right to do so. There was no manifested disposition on the part of the personal representative asking and receiving the allowances in either of those cases to clothe himself in the

fiduciary garments whether or no, and in the face of then pending recorded protests by those whom the law preferred for occupying such positions, or upon whom the law conferred the right to designate the fiduciary. Under such circumstances there existed some foundation for the author's conclusion that the exerpt from 18 Cyc,, *supra,* embodied the "better opinion." However, the qualifying clause to that text, "although in some jurisdictions this is denied," is supported by In Re Barton, 55 Calif., 87; Bowman v. Bowman (Nev.), 76 Pac. 634; In Re Nicholson, 1 Nev. 518; Wilbur v. Wilbur, 17 Wash. 683, and In Re Simmons, 43 Calif. 543, and some other cases from the Supreme Court of Louisiana. To those cases counsel for appellee have added those of Cate v. Cate (Tenn.), 43 S. W. 365; Estate of Millionovich, 5 Nev. 187; Rowe v. Dyess (Tex.), 213 S. W. 234; Dorris v. Miller, 105 Ia. 564; Steven's Appeal, 56 Pa. St. 409; Cameron v. Cameron, 15 Wis. 1, 82 Am. Dec. 652, and the text in 24 C. J. 102.

We have examined the cases relied on by counsel for defendant herein and while all of them do not contain facts exactly parallel with those presented by this record, some of them do, and the facts of the others are sufficient to present the principle of law involved which, in substance is, that where a personal representative has been appointed by the court over the objection of those having a superior right to the appointment, or to designate the appointee, and which appointed representative was never designated by the decedent in any manner or form, or by any other person having the remotest connection with the estate to be administered, and where such appointee incurs expenses in an endeavor to sustain his apparently arbritary nomination by the appointing authority, he should not be allowed his counsel fees incurred in endeavoring to hold on to his appointment; and, especially should that be true, when the representative seeking the allowance qualified at a time when the order nominating him was suspended by a pending motion to set it aside, as was true in this case.

But it is strenuously insisted at this point, by counsel for plaintiff, that this court has decided in the cases of Crow v. Crow, 14 B. M. 383; Reed v. Reed, 24 Ky. L. R. 2438; Phillips, v. Phillips, 81 Ky. 328, and Pryor v. Miznor, 79 Ky. 232, that a nominated executor not only has the right to appeal from an adverse decision on a motion to probate the will, but to defend an appeal from a favor-

able decision, and that he may be reimbursed from the estate for his expenses in so doing. Also, that it is his duty to endeavor to maintain the will, and he argues that the situation of his client was analogous to that of the nominated executor under such circumstances. We have neither the time nor the space to analyze those cases and point out the difference between their facts and those of this one. Suffice it to say, as we have hereinbefore done, that no one in this case having any interest in or connection with the estate, suggested in any manner the appointment of plaintiff, and its mere nomination over the protest of Mr. Bingham conferred no duties upon it, and none rested upon it until it voluntarily assumed them by qualifying at a time when it knew that its appointment was contested, and a casual reading of the opinions in the cases referred to will be sufficient to demonstrate their inapplicability to the facts here presented.

But, it is also argued that if plaintiff had not qualified or had ceased to act upon the superseding of the county court orders the estate, to use the language of counsel, would have been "left naked" with no one to look after or preserve it pending the contest, and counsel seem to think that under such circumstances it was not only the duty of plaintiff to qualify in order to prevent such exposure of the estate, but that in doing so it performed a most commendable act; but which position overlooks the fact that the "nakedness" of the estate is expressly provided against by section 3901 of the statutes empowering the probate court to appoint a curator for the period covered by the controversy and which protection was accomplished at common law by the appointment of a "special administrator" as will be seen from the text in 24 C. J. 1173, and immediately following pages, and Schouler on Wills, Executors and Administrators, 6th edition, vol. 3, sections 1733-1746 both inclusive. It is shown in those texts that such special administrators are sometimes designated *pendente lite* administrators, i. e., that their appointment is for the purpose of taking care of the estate during the period covered by a contest of the right to permanent appointment. If anyone interested in the estate of Mrs. Bingham were apprehensive of any of the disastrous results which might follow counsel's supposed "nakedness" of it, as so luridly pictured by him in his brief, they could have made application for the appointment of a curator pending the controversy over the appointment of plaintiff, but if they did

not see proper to do so we fail to see wherein plaintiff should be called upon to become so exercised in that behalf. The precise question presented in this subdivision of this opinion does not seem to have been heretofore adjudged by this court, but numerous cases are cited by counsel for defendant, wherein kindred and analogous questions were involved, and in each of them principles were announced which we think fully authorize us in concluding that plaintiff should not be allowed, against Mrs. Bingham's estate, any counsel fees for prosecuting its right to administer upon it.

2. What we have said in disposing of question (1) is largely applicable to question (2). We have observed that plaintiff qualified when the motion to set aside its appointment was still pending and the effect of which might be likened to a motion for a new trial in an ordinary action, *i. e.,* to suspend the judgment until the motion was acted on. Surely, there should be some legal remedy by which an objectionable representative could be barred from assuming authority and becoming clothed with its investments, and, unless that could be accomplished by the procedure adopted in this case, under its facts and circumstances, we are at a loss to know how it could be done. At any rate, it is conceded by counsel, and all the cases and authorities so hold, that in order for the applicant to be entitled to compensation in such cases in any event, he or it must have acted in good faith, and as an evidence of that fact we find on nearly every page of brief of plaintiff's counsel protestations of good faith on the part of his client; so much so as to almost excite the suspicion that he "protests too much;" and in doing so he apparently overlooks the *setting,* and the circumstances as well as the proven conversations *before* the nomination of plaintiff by the county court. If, therefore, it were necessary to base our opinion on the absence of good faith it might not be a difficult task to discover some lurking and convincing facts behind the veil of counsel's protestations strongly indicative of the fact.

But, if there were no other objections to allowances for services during the twelve days from September 8 to the 20th of that month, when the orders of the county court were superseded, then the fact remains that no specific administrative act on the part of plaintiff during that period was proven upon the trial. It is true that it was stated generally by the witnesses that they commenced to write letters and to take necessary steps to

look after and preserve the estate, but none of the supposed letters are made a part of the record and the only property of the estate with which plaintiff had any immediate connection, during that or any succeeding period, was the box of jewelry in its vaults. It could not even remove it without application to the depositor of it, and we have no difficulty in concluding that plaintiff never became administratively possessed of that jewelry, and we also differ from learned counsel as to the legal effect of the pleading upon that issue.

3. Supplementary to what we have said in disposing of questions (1) and (2), it may be added in disposing of question (3) that the supersedeas issued by the clerk of the circuit court upon taking the appeal from the orders of the county judge had the effect to suspend the right of plaintiff to perform as administrator during the pendency of the appeal. Mr. Schouler in his work, *supra*, vol 4, section 3480 upon that subject says, "The usual effect of an appeal from a probate decree is not to annul it, but to suspend its operation. Thus, the effect of an appeal from one's appointment as executor or administrator, is to suspend the authority conferred by such appointment, and pending such appeal, and until termination of the controversy, it is a special administrator, if any appointee, who should protect the estate." To the same effect is the text in 23 C. J. 1065, par. 176.

It is pointed out in those texts that the suspending effect of the appeal from the orders of appointment prevail in some jurisdictions *even* without the execution of a bond or issual of a supersedeas, but in others there is no suspension without either or both, and such was the holding of this court in the case of King's Administrator v. Rose, 100 Ky. 393, wherein it is said, "The orders appointing an administrator by the county court may be appealed to the circuit court by any one who is interested, but to suspend the powers of the appointee a supersedeas bond must be given." It is conceded by counsel that an appeal with a supersedeas to this court from the circuit court has the effect to suspend all operations under the judgment appealed from by all persons whomsoever, but he seems to be laboring under the impression that an appeal from the county court to the circuit court with a like supersedeas should not have that effect, especially in probate proceedings. He cites us, however, to no case drawing the distinction and section 978, *supra*, of our statute authorizes the appeal and section 724 of the

Civil Code of Practice provides how the appeal may be taken and prescribes for the execution of an appeal bond "whereupon the clerk (of the circuit court) shall issue an order to the judge, mayor, or justice, rendering the judgment, to stay proceedings thereon." It is, therefore, our conclusion that whatever plaintiff may have done after the taking of the appeal from the orders of the Jefferson county court was without authority and for which it cannot claim compensation against the estate. That conclusion renders it unnecessary to advert to what plaintiff did after that time, or to determine whether such subsequent acts could be compensated for out of the estate, had there been no appeal or supersedeas.

Upon the whole case, we think the judgment dismissing the petition was proper, and it is affirmed.