## Clay v. Howard's Executor.

(Decided Feb. 17, 1933.)

WM. B. GESS for appellant.
DICKSON, BRADLEY & BLANTON for appellee.

Opinion of the Court by Chief Justice Dietzman —Reversing.

Mrs. Maggie Clay Howard died, leaving a personal estate of $10,800.28. Of this sum $9,191.13 represented the principal plus interest to the date of her death of an indebtedness due her from her brother, Frank Clay. She left surviving her as the only beneficiaries of her estate two brothers, Frank Clay, her debtor, and Henry Clay. Frank Clay, was appointed the personal representative of her estate. After paying off certain obligations due the estate and the costs of administration and inheritance taxes, there was a balance going to each brother of $3,460.86. Included in the costs of administration allowed by the county court was a commission to Frank Clay as personal representative of $540, being 5 per cent. on the aggregate personal estate of $10,800.28. This case involves solely the question whether or not Frank Clay was properly allowed as such personal representative a commission on the amount due from him to the estate of his sister of $9,191.13. The lower court held that he was entitled to the 5 per cent. commission on the total estate which, of course, included this $9,191.13, and this appeal results.

At common law, the office of personal representative was purely an honorary one without any pecuniary value to the officeholder. In course of time, this rule was changed and reasonable fees were paid for the services actually rendered by the personal representative in administering and settling the estate, the amount of the fee being left to the sound discretion of the chancellor. Carrol v. Connet, 2 J. J. Marsh, 195. We find prior to 1873 no statute on the subject save section 51 of chapter CCXCIII of volume I of Littell's Laws, which reads:

> "Executors and administrators shall be allowed in their accounts all reasonable charges and disbursements which they shall lay out and expend in the funeral of the deceased and other their administration (sic) and in extraordinary cases may be allowed such recompense for their personal trouble as the court on passing their accounts shall adjudge reasonable."

In the case of Worsley's Ex'r v. Worsley, 16 B. Mon. 455, decided in 1855, it was held that an executor

was not entitled to a commission on so much of his testator's estate as comprised a debt due from him to the testator. The court there said:

> "So far as the executor was indebted to his testator at the time of his death, neither his duties nor his responsibilities have been increased by the assumption of the office of executor. It was his duty as a debtor to pay the amount he owed to the person legally entitled to receive it, and no other duty has devolved upon him as executor. The chancellor, therefore, properly refused to allow him any commission on this part of the estate in his hands."

In 1873 the Legislature set by law maximum allowances to be paid personal representatives for their services in administering estates. In 1876 a change was made in the law of 1873. The history of these laws is concisely set forth in the case of Renick's Ex'r v. Renick, 92 Ky. 335, 17 S. W. 1018, 1019, 13 Ky. Law Rep. 600. We quote from that opinion:

> "It was thought by the legislature adopting the General Statutes that the discretion (theretofore vested in the chancellor to fix allowances to personal representatives) had been greatly abused in the interest of such fiduciaries, to the detriment of the estates confided to their custody. Therefore the maximum allowance for their services was fixed at 5 per cent. on the first thousand dollars, 4 per cent. on the second thousand, and 3 per cent. on the third thousand, and 2 per cent. on the remainder. The legislature, deeming that these graded maximum sums might not, in some cases, be enough, in 1876 authorized a maximum allowance of not exceeding 5 per cent. 'on all the amounts received and distributed.' The allowance thus limited was not intended to be confined to compensation for the mere acts of 'receiving and distributing,' and the routine usually required in the performance of such duties; for the court fixing the compensation is allowed a discretion, controlled by the character of services rendered, in any sum not exceeding 5 per cent. on 'all the amounts received and distributed,' which 'amounts' include the entire estate that the law or will requires the fiduciary to receive and pay over or divide among the persons entitled to it, and which he does receive and pay

over. * * * *Said sum of 5 per cent., as said, is the maximum allowed for all the duties that are required of the fiduciary in order to carry out in good faith to the best of his ability the trust that he has assumed.* * * * Said act, when considered in connection with the evil intended to be remedied by the act of 1873, leaves no doubt on the mind that the act was intended to control *the compensation for the entire services that it was the duty of the fiduciary to perform.*" (Italics ours.)

Section 3883 of our present Statutes is substantially the same as the act of 1876. This section was construed in the case of Avey v. Stearman, 145 Ky. 574, 140 S. W. 1055, 1057. In that case the question was whether a personal representative was entitled to charge a commission on that part of the estate of the decedent which went to such personal representative as a beneficiary of such estate. The personal representative in that case was not indebted to the decedent. The court held that she was entitled to such commission. In determining the construction to be put on section 3883, the court said:

"The compensation *is allowed for services rendered,* and we see no good reason for holding that, where one, although holding a claim against the estate, renders this service, he should not be entitled to the same compensation he would be if he held no claim." (Italics ours.)

We thus see from this Renick Case and this Avey Case that the act of 1876 and section 3883 of the Statutes, substantially similar in content, have been construed to mean that the compensation authorized by them to be paid to the personal representative is not for the mere act of collecting and distributing moneys due the estate, but is for the service rendered in connection with the administration of the entire estate; all the services, the filing of the inventory, the adjusting of taxes, the making of final settlements, as well as the collection and disbursement of cash. Thus we see the compensation is not to be determined by whether it was the duty of the personal representative who was indebted to the decedent to pay that debt or not. It is not allowed for merely collecting and distributing. It is paid for the services in administering the estate, and is measured by the amounts collected and distributed,

irrespective of his duty as debtor to pay. The compensation for the services of the personal representative is measured in the main by the amounts collected and distributed. This is one of the yardsticks by which the compensation is to be measured. We thus see that the statutes mentioned have given us a different rule to go by than was the case when Worsley's Ex'r v. Worsley was decided.

The compensation, then, to the personal representative being determined in the main by the amounts collected and disbursed, we have then presented the question whether the amount which a personal representative who is also a debtor to his decedent takes from the estate as a beneficiary, if within the limits of what the personal representative owes the estate, is in any just sense a collection or disbursement within the meaning of the statute. We think not. In such state of case the beneficiary in truth simply takes credit in his accounts as personal representative on what he owes the estate by that which he receives as beneficiary. The amount which he takes as beneficiary in such state of case being in truth no collection or disbursement within the meaning of the statute, it is not to be taken into account in measuring his compensation.

As the amount which went to Frank Clay as a beneficiary of his sister's estate was less than that which he owed her, he is entitled to no commission for his services as personal representative of her estate measured by that amount. He is entitled to commissions on the rest of the personal estate, for they were collections and disbursements, and his compensation in administering the estate is to be measured by them. The judgment of the lower court is reversed, with instructions to enter a judgment in conformity with this opinion.

Whole court sitting, except Judge Clay, who took no part in this decision.