## Hamilton et al. v. Nunn et al.

(Decided Feb. 24, 1933.)

JOHN E. RICHARDSON, M. O. SCOTT, and R. H. CROCKETT for appellants.

H. L. JAMES, WOODWARD, HAMILTON & HOBSON, and A. J. THOMPSON for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

J. A. Hamilton, Sr., died a resident of Metcalfe county, Ky., on March 26, 1929, leaving an estate valued

at approximately $135,000, of which approximately $85,000 was in personalty, and the remainder in real estate located in Metcalfe county. He devised his estate equally to his five children after charging his son, J. A. Hamilton, Jr., with an advancement of $11,350, and his daughter, Mrs. Amanda Thompson, with an advancement of $500. In his will he nominated his son, J. A. Hamilton, Jr., and his daughter, Mrs. Mary Nunn, executors of his will. The will was probated in the Metcalfe county court on April 22, 1929, and Mrs. Nunn declined to act as executrix, and the court refused to permit J. A. Hamilton, Jr., to qualify as executor, on the ground that he was a nonresident of the state, and appointed Mrs. Mary Nunn, Mrs. Nora Thompson, and Mrs. Ethel Davis, three daughters of the testator, administratrices with the will annexed.

J. A. Hamilton, Jr., appealed to the Metcalfe circuit court from the order of the Metcalfe county court, and the circuit court entered a judgment setting aside the order of the county court and directing it to permit J. A. Hamilton, Jr., and Mrs. Mary Nunn to qualify as executors of the will of J. A. Hamilton, Sr. On appeal to this court, the judgment of the Metcalfe circuit court was affirmed. Nunn v. Hamilton, 233 Ky. 663, 26 S. W. (2d) 526, 530. On the return of the case, J. A. Hamilton, Jr., and Mrs. Mary Nunn qualified as executor and executrix, respectively, of the will of their father, and proceeded to administer the estate. They filed settlements from time to time in the circuit court, where a suit was pending for a settlement of the estate, and it appears that the total amount of personal property converted into cash and distributed by them was $81,028.27. Upon final determination of all questions involved in the settlement suit, the circuit court allowed J. A. Hamilton, Jr., $1,050 commission as executor, and $750 for extraordinary services rendered as executor, or a total of $1,800, and allowed like amounts to Mrs. Mary Nunn, executrix. The attorneys for J. A. Hamilton, Jr., as executor, asked that they be allowed the sum of $7,500 attorneys' fees, and the court allowed them the sum of $3,500. The attorneys for Mrs. Mary Nunn as executrix were allowed the sum of $2,500.

J. A. Hamilton, Jr., has appealed claiming that he is entitled to an additional allowance of commissions as executor, and that the court erroneously refused to

allow him credit for expenses incurred by him amounting to $239.89, and his attorneys have appealed from the judgment allowing them only $3,500 attorneys' fees. The appellees, Mrs. Nora Thompson, Mrs. Amanda Thompson, and Mrs. Ethel Davis, by a cross-appeal seek a reversal of so much of the judgment as allows $6,000 for attorneys' fees and $3,600 as commissions to the executor and executrix, and appellee, Mrs. Mary Nunn, by a cross-appeal seeks a reversal of that part of the judgment allowing $3,500 to the attorneys employed by J. A. Hamilton, Jr., and of so much of the judgment as fails to allow the attorneys employed by her one-half of the allowance made for attorneys, and of that part of the judgment allowing J. A. Hamilton, Jr., any compensation for extraordinary services. All of the attorneys are parties to the appeal.

The decedent's personal estate consisted of $20,650 of government bonds, two policies of life insurance for $5,000 each, about $37,000 cash in bank, 55 shares of stock in the Farmers' & Merchants' Bank of Edmonton, appraised at $5,500, 1,050 shares of Inter-Southern Life Insurance Company stock, appraised at $1,050, several small notes, live stock, farming equipment, and furniture and household goods; the whole amounting to approximately $85,000. He also owned 4,000 acres of land in Metcalfe county, which was sold for $50,335.

Appellant J. A. Hamilton, Jr., insists that the allowance to him of $1,800 for services as executor is inadequate, and the appellees claim with equal vigor that the allowance to the executor and executrix should not exceed $1,000 to each. In fixing the compensation of personal representatives, section 3883 of the Kentucky Statutes is controlling. That section provides that the allowance to personal representatives shall not exceed 5 per cent. on all the amounts received and distributed, but an additional allowance may be made if the personal representative has been required to perform extraordinary services. A history of the statutes fixing the compensation of personal representatives may be found in the case of Clay v. Howard's Executor, 247 Ky. 512, 57 S. W. (2d) 484, decided February 17, 1933.

In Douglas' Administrator v. Douglas' Executor, 243 Ky. 321, 48 S. W. (2d) 11; Carpenter's Administrator v. Demoisey, 237 Ky. 628, 36 S. W. (2d) 27; and Evans' Administrator v. McVey, 172 Ky. 1, 188 S. W.

1075, it was said that a personal representative is entitled to a commission of 5 per cent. on the amount distributed by him. In each of these cases the personal estate consisted principally of tangible personal property, notes, stocks, and bonds which the personal representative converted into cash and distributed. It has never been held that a personal representative is entitled to the maximum commission of 5 per cent. where the estate consists principally of cash in bank or property such as government bonds, or insurance policies easily convertible into cash, and the settlement of the estate involved no complications, and we do not think the statute is susceptible of the construction that the maximum commission fixed by the statute must be allowed in every case. Baldwin's Executor v. Barber's Executors, 148 Ky. 370, 146 S. W. 1124.

In the instant case, almost the entire personal estate consisted of cash in bank, government bonds, and insurance policies. There were a few small notes, and about $5,000 worth of tangible personal property. The total amount of cash distributed was $81,028.27. Fifty-five shares of bank stock, appraised at $5,500, and 1,050 shares of Inter-Southern Life Insurance Company stock, appraised at $1,050, were distributed in kind. Only a reasonable compensation, which in this case would be a nominal amount, should be allowed for distributing the bank stock and insurance company stock. Douglas' Administrator v. Douglas' Executor, supra; Stratton v. Wilson, 170 Ky. 61, 185 S. W. 522, Ann. Cas. 1918B, 917. If the maximum commission of 5 per cent. were allowed, the executors would be entitled to $4,051.40, or $2,025.70 each. It seems to be conceded by counsel of both the appellant and the appellees that a personal representative is not entitled to commissions on funds distributed to himself; but in this view they are in error. It has been held in a number of cases that a personal representative is entitled to a commission on the amount which was received by him as a distributee. Clay v. Howard's Executor, supra; Taylor v. Taylor, 223 Ky. 799, 4 S. W. (2d) 752; Avey v. Stearman, 145 Ky. 574, 140 S. W. 1055; Garr v. Roy, 50 S. W. 25, 20 Ky. Law Rep. 1697. The circuit court allowed each of the executors $1,800, but $750 of this amount was allowed for extraordinary services. While the proof fails to show that the services claimed to have been extraordinary in their nature were such as the statute contemplates to

authorize an additional allowance, yet, we think the total allowance was substantially correct. The will of J. A. Hamilton, Sr., authorized the executors to sell and convey the real estate after due consultation with the other devisees. The executors and the other devisees were unable to agree among themselves upon a plan for the sale of the land, and it became necessary to sell it under an order of the court, though each of the heirs was sui juris. Appellant's claim for additional allowance for extraordinary services rendered as executor is based chiefly upon services rendered in connection with the sale of the land, but the land was not sold by virtue of the authority conferred upon the executors by the will, but because of their failure to agree upon a plan of sale it was sold by the master commissioner of the court, and any services rendered by appellant were not rendered as executor, but in a private capacity.

The circuit court refused to allow appellant's claim for three items aggregating $239.89 as expenses incurred by him in undertaking to assist in selling the land. These expenses were incurred by appellant as a volunteer, not as executor, and the court properly refused to allow them as expenses of the executor.

The court allowed for the compensation of counsel the sum of $6,000, of which the sum of $3,500 was allowed as compensation to the attorneys of appellant, and $2,500 as compensation to the attorneys of Mrs. Mary Nunn, executrix. In addition to their own compensation, the executors were entitled to an allowance to cover reasonable and necessary counsel fees. Bohn v. Bohn's Guardian, 229 Ky. 608, 17 S. W. (2d) 712. Several attorneys were employed by each executor, but their fees must be measured as though the work had been done by one attorney. Miller v. Keown, 176 Ky. 117, 195 S. W. 430.

Mrs. Nunn complains because her attorneys were not allowed one-half the fees fixed by the court. However, the principal part of the litigation had been completed before she offered to qualify as executrix. Until that time her attorneys were not representing her as executrix; but they were representing her and her sisters in an effort to prevent her brother from qualifying as executor. On the other hand, the attorneys for appellant were representing him in litigation in which he was attempting to assert his right to qualify as executor.

In this litigation they were not representing him in his individual capacity, as claimed by appellees, but in his fiduciary capacity. It was the duty of appellant as one of the nominated executors of his father's will to carry out its provisions, and one of its provisions was that he should administer on the estate. In asserting his right to qualify as executor, he was seeking to carry out the testator's wishes, expressed in the will, and, in doing so, was acting in a representative capacity. Appellees rely upon the case of Louisville Trust Company v. Fidelity & Columbia Trust Company, Administrator, 209 Ky. 289, 272 S. W. 759, but in that case an administrator was appointed over the objection of the decedent's husband, and the order making the appointment was later set aside. It was held that under the circumstances the appointee was not entitled to its counsel fees incurred in endeavoring to sustain its appointment. The appointment of the administrator in that case was arbitrary and unauthorized, and the appointee was clearly acting in its individual capacity when it sought to sustain the appointment. As was said in Nunn v. Hamilton, supra:

> "There is a wide difference between administrators and executors, and, in view of the well-settled principle that the testator's wishes should be heeded, an executor deserves greater consideration when his right to qualify is contested. A testator has the right to appoint any one whom he deems proper as executor of his will, and his solemn selection is not lightly to be disregarded."

The total compensation allowed to the executors and their attorneys was $9,600, or approximately 12 per cent. of the personal estate. When the character of the estate is considered, the allowance to the attorneys is at first blush exorbitant. The testator left no debts, and his personal estate consisted almost entirely of cash, or property easily convertible into cash. The administration of the estate should have been a simple matter, and the need for the advice or services of attorneys was slight. There was considerable litigation, but none of it was necessary, and all resulted from the inability of the heirs to agree as to who should administer the estate and how it should be administered. The ill feeling existing between them has subjected the estate to large and unnecessary costs; but the attorneys for the re-

spective parties have not been responsible for the unfortunate situation. They have rendered valuable services, and should not be penalized for the conduct of their clients, but should be allowed reasonable compensation for their services. In view of all the circumstances, we think the allowances made by the circuit court are fair and equitable, and should not be disturbed.

The judgment is affirmed, both on the original and the cross appeals.