## Osborne's Executrix v. Osborne et al.

(Decided Dec. 12, 1933.)

A. B. THOMASON and ROBERT B. FRANKLIN for appellant.
BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

J. W. Osborne died in February, 1930, a resident of Scott county, Ky., testate, leaving surviving him his widow, Betsy Osborne, two married daughters, Ruby Osborne Sharp and Ruth C. Osborne Singer, and four infant grandchildren (children of his deceased son, Ben Miller Osborne) to wit: John William Osborne, Ben Miller Osborne, Virginia Lee Osborne, and Betsy Miller Osborne. Decedent, at the time of his death, owned about 1,500 acres of land in Scott county and considerable personal property. By the terms of his will he devised a certain portion of his property, real and personal, to his wife, Betsy Osborne, and a certain portion of his real property to his two daughters and the infant grandchildren above named. Under paragraph IX of the will he designated and appointed the appellant, Betsy Osborne, executrix of the will, and trustee for the grandchildren, and directed that no bond or security be required of her, and further provided, in paragraph VI of the will, that the executrix, Betsy Osborne, should hold, manage, perform, and receive the income from the lands devised to his grandchildren and use same for their benefit until the lands were divided among them, and that the lands so devised to the grandchildren be kept together and operated as one tract for their joint use and benefit until the youngest shall reach 21 years of age. Soon after the death of the testator, his widow qualified as executrix of his estate and trustee and guardian of the grandchildren, as provided by the will. In May, 1931, the grandchildren, by their mother and next friend, Annie Laurie Osborne, brought this suit in the Scott circuit court against Betsy Osborne, as executrix and also as trustee and guardian of the grandchildren, for the purpose of settling the estate of decedant and to remove her as trustee and guardian, alleging in their petition that she was squandering and wasting the estate of decedent and of the grandchildren and converting same to her own use. Soon after the suit was filed the appellant voluntarily resigned as trustee of the grandchildren, and the First National Bank of Georgetown, Ky., was appointed trustee in her place.

Special and general demurrers were filed to the petition on ground that the circuit court had no jurisdic-

tion to remove appellant as trustee of the children, but that this jurisdiction was vested solely in the county court. This point might have been well taken but for the fact that appellant voluntarily resigned her trust, and thereafter the suit was proceeded with and prosecuted for the purpose of settling the estate of decedent, of which branch of the suit the circuit court had jurisdiction. The cause was referred to the master commissioner, the proof taken, and the commissioner filed his report to which Mrs. Sharp, one the devisees under the will, and the First National Bank, guardian for the grandchilren, filed exceptions.

The exceptions filed to the settlement of the executrix of the estate of deceased consist of eight items, only a part of which are questioned on this appeal, and we will consider only the ones appealed from.

Exception No. 2 involves the sum of $2,451.05 representing a note and interest thereon which Mrs. Osborne paid to herself out of the proceeds of the estate of her decedent. She alleged that in the lifetime of decedent he executed and delivered to her his promissory note in the sum of $1,672.12, with interest at the rate of 6 per cent. per annum from May 20, 1932. In her settlement she filed only the voucher by which she paid to herself this note and interest, but did not file the note or other proof thereof. Later she filed a copy of the note which was written on a typewriter, and the purported signature of J. W. Osborne was typewritten. The chancellor sustained exceptions to this item, which we think was proper. She (the executrix) filed no proof of claim with the note except her own affidavit in which she stated that it was a true copy of the note. She does not file the original note or account for her reason for not producing it. The execution of the note was denied, which placed the burden on the holder to prove that there was such a note, and we do not think she sustained this burden. Darraugh v. Denny, 196 Ky. 614, 245 S. W. 152; Thompson v. Eversole, 162 Ky. 836, 173 S. W. 165.

Exception No. 3 relating to the sum of $526.60 representing the proceeds of tobacco belonging to the estate, and exception No. 4 in the sum of $556.85 relating to certain tobacco sold in the spring of 1930 belonging to the estate, and exception No. 5 in the sum of $560 relating to rents, were sustained, and exception No. 6 in the sum of $118 relating to the proceeds of the sale of

certain hogs was overruled and allowed as a proper credit on the settlement, and exception No. 8 in the sum of $80 realized from the sale of two heifers was overruled and allowed as a proper credit on the settlement of the estate.

Without detailing the evidence relating to the above named items, 2, 4, 5, 6, and 8, respectively, it is sufficient to say that we have examined the evidence and find it to be sufficient to support the finding of the chancellor, and his rulings thereon are affirmed.

Exception No. 7 involves an item of $8,500 representing the payment of a certain note and interest to the Georgetown National Bank on which G. W. Osborne was an indorser for his daughter, Ruth C. Osborne Singer. This note was paid a few days previous to the death of Mr. Osborne, by a check drawn and signed by his wife, Betsy Osborne, the now executrix of his estate. It is disclosed by record that his wife, Betsy Osborne, had the right to draw checks on the bank account of decedent, then her husband, which she signed "G. W. Osborne, by Betsy Osborne." The record discloses that, a few months previous to the illness and death of G. W. Osborne, he went to the Georgetown National Bank and told the cashier that his daughter Ruth C. Osborne Singer and her husband wanted to buy a home in Georgetown and that he "guessed he would have to buy it for them." His daughter, Mrs. Singer, executed her note for the sum of $8,160, and G. W. Osborne, her father, signed the note as an indorser. During his last illness, and as the record shows, when he was unable to transact or look after his business, Mrs. Osborne went to the bank and paid the note as hereinabove stated. In her settlement, as executrix of the estate, she filed her voucher representing this item, as a credit on the settlement. The chancellor overruled exceptions to this item and held it to be proper credit on her settlement to which appellees excepted and have prosecuted their cross-appeal as to this item.

The evidence strongly indicates that decedent intended to purchase the home for his daughter, but, however this may be, he was obligated to pay the note, and it is immaterial whether it was paid before or after his death. Had the note not been paid in his lifetime, it nevertheless would have been a subsisting debt and liability against the estate. This item can be adjusted between

the heirs and devisees in the final settlement of the estate as between them. It is our view that the chancellor properly overruled the exceptions thereto, which is affirmed.

Exceptions to the settlement of Betsy Osborne as guardian and trustee of the infant children are set up in 11 different items. The chancellor's rulings on these exceptions are as follows: Exception No. 2, the guardian and trustee sought to charge the children with an item of $227.03 representing a loss she sustained in certain transactions which involved in part the funds of her infant wards, to which item the exceptions were sustained; exceptions No. 3 and 4, regarding corn and fodder produced on the lands devised to her wards, overruled; exceptions No. 5 and 6, relating to wheat and clover, respectively, alleged to have been unaccounted for, were sustained; exception No. 7, relating to insurance recovered for damages to a barn of the infants, overruled; exception No. 8, representing expenditures for the benefit of the infants for their estate, overruled; exception No. 9, relating to cordwood from the lands of the infants, sustained; exception No. 10, relating to one pump jack, alleged property of the infants, overruled; exception No. 11, relating to pasturage on the farm of the infants, sustained in part and overruled in part.

Without detailing the evidence relating to these items it is sufficient to say that, on an examination of the evidence, it is our conclusion it was sufficient to sustain the rulings of the chancellor, and his rulings thereon are affirmed.

Another question involved in his appeal is that of the allowance made by the chancellor to appellant's attorneys for legal services rendered. A. B. Thompson filed his affidavit in which he detailed the various suits and nature of litigation he had attended to together with his counsel, Robert B. Franklin, and fixes the value of his services rendered at the sum of $2,000. Two or three disinterested attorneys of the bar, taking Mr. Thompson's affidavit as a basis for their opinion, fix the value of the services rendered by the attorneys in sums ranging from $2,000 to $2,500. The chancellor, upon consideration, allowed Messrs. Franklin and Thompson the sum of $600 for representing the executrix and the sum of $150 for representing her as guardian and trustee.

In view of the value of the estate and the number

of suits involved and the evidence disclosed by the various affidavits, it is our view that the allowance so fixed by the chancellor is inadequate, and we are constrained to the conclusion that appellant's attorneys should have been allowed the sum of $850 for representing the executrix, and, in addition thereto, the sum of $150 as fixed by the chancellor, for representing her as guardian and trustee, making a total sum of $1,000 for their services rendered in representing her in both capacities.

It is insisted for appellee that, in view of Mrs. Osborne's conduct in handling the estate as trustee and guardian of the grandchildren, she was not entitled to any allowance for her counsel in representing her as such trustee.

This position might be tenable had Mrs. Osborne been acting in a personal capacity, but, inasmuch as she was acting in a representative or fiduciary capacity, she was entitled to a reasonable allowance for her attorneys for representing her in such capacity. Hamilton et al. v. Nunn, 247 Ky. 715, 57 S. W. (2d) 655.

Wherefore the judgment of the chancellor is affirmed on the original appeal as relates to the appellant's settlement as executrix, guardian, and trustee, and reversed with respect to allowance of attorney fees, with directions for order of allowance for her attorneys in the sums hereinabove indicated, and affirmed on the cross-appeal.

Whole court sitting.