**NOT RECOMMENDED FOR PUBLICATION**
**File Name:  14a0336n.06**

**No. 13-5081**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WHOLESALE PETROLEUM PARTNERS, L.P., | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Apr 29, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| SOUTH CENTRAL BANK OF DAVIESS | ) | UNITED STATES DISTRICT |
| COUNTY, INC., and DAVID E. FORT, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:  DAUGHTREY, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Wholesale Petroleum Partners, L.P. (WPP) appeals the district court's grant of summary judgment in favor of defendants South Central Bank of Daviess County, Inc. (the Bank) and its president, David E. Fort.  For the reasons set forth below, we affirm the judgment of the district court.

I.

William Saalwaechter is the former owner of a fuel and convenience store business, Wholesale Petroleum, Inc. (WPI).  In 2004, Saalwaechter sold WPI to Larry Clark.  WP Sales is a separate corporation.  WPI was experiencing cash flow problems.  Because of these problems, WPI was unable to open an account with Automatic Clearing House (ACH) privileges with the

Bank, and a WP Sales account (Account 3711) was used instead for that purpose. Account 3711 was opened on January 11, 2008, with ACH features.

On January 15, 2008, WP Sales authorized online banking services for Account 3711. According to the Internet Banking Enrollment form, Clark and a WPI employee, Debbie Drewry, were authorized to conduct online banking for Account 3711, and Tom Carroll, WPI's attorney and a director, was listed as a "view only" user. Clark, Saalwaechter, and Carroll were signatories to the account. The form also indicated that Account 3711 and Account 4511 (a WPI account) were linked for internet banking purposes. The purpose of Account 3711 was to collect WPI's incoming funds from WPI customers using the ACH system; once the funds were deposited in Account 3711, Drewry would immediately transfer the funds into Account 4511.

This case concerns a deposit of $200,000 of Saalwaechter's personal funds into Account 3711. WPP claims this deposit was a loan to WP Sales and WPI; the Bank and Fort claim this deposit was not a loan, but merely a "float" to cover potential overdrafts resulting from the constant transfer of funds from Account 3711 to Account 4511 and that the money remained, at all times, the property of Saalwaechter. In support of its position, WPP points primarily to two promissory notes: one from January 25, 2008, and a renewed promissory note from March 26, 2008. Both of the notes are signed by Clark and Carroll and promise to repay Saalwaechter for the $200,000, plus any interest and court costs. Saalwaechter denies having ever accepted the promissory notes; in support of their position, the Bank and Fort point to, among other things, Clark's deposition at which he testified that it was his understanding that Saalwaechter could take the money back at any time.

In the late summer of 2008, WPP became a creditor of WPI. On February 2, 2009, Drewry, at Clark's direction, transferred $149,000 from Account 3711 to Account 4511 (the

February 2 Transfer). According to Drewry, this transfer "pretty much drained" Account 3711. Despite this, Account 3711 continued to be used to pay WPI's debts.

On February 19, 2009, Saalwaechter met with Fort and told Fort to transfer the $149,000 back to Account 3711. After obtaining from Saalwaechter a hold harmless agreement and an indemnity agreement, Fort complied. Once the funds were back in Account 3711, Saalwaechter withdrew them. WPI, unaware that the $149,000 had been withdrawn from Account 4511, re-deposited in Account 3711, and subsequently withdrawn altogether, defaulted on obligations to WPP as a result. Both WPP and Clark made written demands to Saalwaechter to return the funds to Account 3711.

WPP filed the instant action on June 15, 2009, raising the following claims: (1) breach of contract in violation of Ky. Rev. Stat. § 355.4A; (2) gross negligence; (3) violations of the ACH rules of the National Automatic Clearinghouse Association (NACHA); (4) interference with contractual and business relationships; and (5) conversion of funds. The parties filed cross-motions for summary judgment. The district court initially denied both motions, concluding that the dispositive issue was whether the February 2 Transfer was authorized, and that because a fact question remained as to the nature of the agreement between the parties about the $200,000, a fact question remained as to whether the February 2 Transfer was authorized. On June 1, 2012, the Bank filed a renewed motion for summary judgment. The district court granted this motion. Between the two motions for summary judgment, Clark had been deposed; at that deposition, Clark testified that at the time Saalwaechter deposited the $200,000, Clark understood that the money was Saalwaechter's and that Saalwaechter could withdraw it at any time. The district court reasoned that Clark's deposition "alters its previous conclusion that there are questions of fact as to the agreement between the parties that preclude summary judgment." WPP appealed.

II.

We review de novo an order granting summary judgment. *Wimbush v. Wyeth,* 619 F.3d 632, 636 (6th Cir. 2010). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Int'l Dairy Foods Ass'n v. Boggs,* 622 F.3d 628, 635 (6th Cir. 2010). When considering a motion for summary judgment, the court should, viewing the evidence in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir. 2003), determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52; *Int'l Union v. Cummins, Inc.,* 434 F.3d 478, 483 (6th Cir. 2006).

III.

At its core, this case is a dispute over the existence of a contract. WPP claims there was a contract governing the $200,000 deposit; namely, that the deposit was a loan, evidenced principally by the promissory notes. Accordingly, WPP claims that, as a loan, the deposit was its property and Saalwaechter could not simply take it back unilaterally. By contrast, the Bank's and Fort's claim is precisely the opposite: that there was no contract governing the $200,000 deposit. Their position is that Saalwaechter's deposit was simply a gratuity, a favor by Saalwaechter to his former company. They claim that the money was therefore Saalwaechter's at all times and could be withdrawn by him at any time. In Kentucky, "[t]he party holding the affirmative of an issue must produce the evidence to prove it." Ky. R. Civ. P. 43.01(1). Accordingly, the burden rests with WPP to establish that the $200,000 deposit was a loan, governed by the terms of a contract.

We conclude that WPP has not met its burden to show that the $200,000 deposit was a loan. WPP's primary evidence is the promissory notes. But, in order to enforce the promissory notes, Saalwaechter needed to accept and possess the promissory notes. Ky. Rev. Stat. §§ 355.3-301, 355.1-201(2)(u). And, WPP has shown no evidence that Saalwaechter ever accepted the promissory notes—all WPP can establish is that the promissory notes were drawn up; Saalwaechter denies having ever accepted or possessed the promissory notes. The promissory notes, when proffered by WPP, are merely evidence that Clark and Carroll offered to repay Saalwaechter. However, "a proposition or offer imposes no obligation on the party making it unless it is accepted by the party to whom it is made, and no obligation is then imposed unless the acceptance closes the contract, so that it is binding upon both parties, for where the promise of one is the consideration of the other, neither party can be bound unless the other is bound." *Citizens Nat'l Life Ins. Co. v. Murphy*, 156 S.W. 1069, 1070 (Ky. 1913); *see also Thompson v. Eversole*, 173 S.W. 165, 167 (Ky. 1915) (if one party denies the execution and delivery of a written contract, the burden of proof is on the other party to establish the existence of contract). Accordingly, the promissory notes are insufficient on their own to establish that Saalwaechter agreed to be bound by the terms of the promissory notes, absent some evidence that the promises contained in the notes were accepted by Saalwaechter.[1] And WPP has offered no such evidence. Put another way, when proffered by WPP in this case, the notes only establish a one-way

----

[1]Perhaps obviously, if the facts of this case were different, so would our analysis be with regard to the effect of the promissory notes. If it were Saalwaechter, as promisee, seeking to enforce payment on a promissory note in his possession against Clark and Carroll, as promisors, we would have little trouble concluding that Saalwaechter accepted the offer of repayment. Indeed, such a procedural posture is commonplace. *See, e.g., Catron v. Citizens Union Bank*, 229 S.W.3d 54, 56 (Ky. Ct. App. 2006). The posture of this case is unusual. Here, a creditor of an alleged promisor seeks to establish that the mere existence of a promissory note proves that a contract existed, and the alleged promisee denies the existence of a contract.

promise—they do not establish that promises were exchanged between the parties. Accordingly, the notes themselves do not establish the existence of a contract governing the $200,000 deposit.

Moreover, there is considerable evidence that the parties understood that there was no contract between the parties as to the $200,000. First, and importantly, Clark—WPI's owner and the alleged promisor—testified at his deposition that he understood that the $200,000 was Saalwaechter's and that Saalwaechter could take the money back at any time. This testimony directly contradicts WPP's position that the deposit was a loan. Clark's testimony comports with Saalwaechter's assertions that the deposit was merely a gratuity and not a loan, and the statements of Fort and David Zachary, the Bank's vice president, who each averred that it was their understanding that the deposit was Saalwaechter's money, and not a loan. Second, as the district court noted, the parties' conduct during the course of the year following the deposit strongly suggests that the parties understood that the money was at all times Saalwaechter's. *See Shackelford v. Phillips*, 68 S.W. 441 (1902) (conduct of the parties is instructive in determining whether a contract exists). Specifically, Saalwaechter did, in fact, periodically withdraw money from Account 3711 without objection. For example, in the late summer of 2008, Saalwaechter withdrew $100,000 from the account, and in December 2008, Saalwaechter withdrew $40,000 from the account. Each time, he eventually re-deposited the money into the account. Each time he withdrew funds from the account, he did so without objection from anyone. Accordingly, the parties' conduct strongly suggests that no contract governing the $200,000 existed.

Kentucky Revised Statutes § 355.4A-211(3)(b) permits banks to cancel unauthorized transfers. Saalwaechter was a signatory to Account 3711. Because WPP has failed to establish that the $200,000 deposit was a loan, we conclude that the February 2 Transfer was unauthorized. Accordingly, the Bank was permitted by statute to cancel the February 2 Transfer

and return the money to Account 3711. In short, we agree with the district court and affirm its grant of summary judgment in favor of the Bank and Fort.

IV.

WPP raises several arguments as to why the district court erred. None has merit.

First, WPP argues that the district court was limited to the four corners of the promissory notes for evidence of the parties' intent. Specifically, WPP argues that "[a]s a loan transaction, the agreement [governing the $200,000] falls squarely within" the Kentucky Statute of Frauds, Ky. Rev. Stat. § 371.010. WPP similarly argues that by considering evidence extrinsic to the four corners of the promissory notes, the district court violated the parol evidence rule. We disagree. WPP's argument assumes what it attempts to prove—that the promissory notes are evidence of the existence of a contract. As noted above, WPP has failed to carry its burden to establish that the promissory notes amounted to a contract in the first instance because it has not offered evidence that Saalwaechter ever accepted the promissory notes. Put another way, WPP cannot use evidence of an offer to also prove acceptance of that offer.

Second, WPP argues that the $200,000 deposit was a general deposit, as opposed to a special deposit, and therefore, under Kentucky Law, those funds became property of the Bank, not Saalwaechter. Accordingly, WPP argues that Saalwaechter could not withdraw the funds. We disagree. As explained above, Kentucky law permits a bank to cancel an unauthorized transfer (in this case, the February 2 Transfer). Saalwaechter was a signatory to Account 3711 and, as such, was authorized to withdraw funds from that account once the February 2 Transfer was cancelled by the bank.

Third, WPP argues that by reversing the February 2 Transfer, the Bank violated its depository agreement with WP Sales because once the $200,000 was deposited into Account

3711, it became the property of WP Sales, and Saalwaechter was not a member of WP Sales. We disagree. Putting aside that WPP fails to identify which section of the agreement the transfer allegedly violated, WPP does not dispute that Saalwaechter was a signatory to Account 3711. WPP has not identified any provision of Kentucky law (or any provision of any document from the Bank) that would establish that a company cannot authorize a nonmember to have access to its accounts.

WPP also argues that the district court erred by overruling its objections to the admission of Drewry's affidavit. However, WPP offers no citations to any legal authority in support of its position. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Accordingly, we decline to address this issue.

V.

For the foregoing reasons, we affirm the judgment of the district court.